## H. P. HINSON v. R. L. SMITH & CO.

*Chattel Mortgage—Possession of Mortgaged Property—Actions for Damages, Causa Remota and Causa Proxima—Rights and Remedies of Mortgagor and Mortgagee inter sese.*

1. In the absence of an express stipulation to the contrary, the mortgagee of personalty may take possession of it, any time before or after condition broken.

2. A mortgagee who takes possession is held to a full and strict account for the rents and use of the property; for not only the profits actually received, but for the value of any reasonable and prudent use to which he might have put the property without detriment thereto.

3. A mere permission granted to a mortgagor to take the property to his home is not such a stipulation as will deprive the mortgagee of his legal right to take possession under his mortgage whenever he sees fit to do so.

4. The rule is that consequential damages in an action of *tort* must be the proximate consequence of the act and not the secondary result thereof.

5. Where a mortgagee took possession of a horse covered by the mortgage, in consequence of which the mortgagor had to walk home and suffered from the cold during his walk; *Held,* that such suffering of the mortgagor was too remote to be considered by the jury in an action for damages.

6. The relations existing between mortgagor and mortgagee, the legal *status* of each as to the other, their respective rights and remedies with respect to possession of the mortgaged property, whether real estate or personalty, explained by the Chief Justice.

CIVIL ACTION, tried before *Graham, J.,* at December Special Term, 1895, of GREENE Superior Court.

There was a verdict and judgment in favor of the plaintiff. Defendants appealed.

The facts appear in the opinion.

*Mr. J. B. Batchelor*, for defendants (appellants).
No counsel, *contra.*

FAIRCLOTH, C. J.:  Plaintiff and defendant, exchanged horses on October 23, 1894, and as "boot" money the plaintiff gave his note to defendants for $50 and secured the same by a mortgage on his mare, the defendants having warranted her to be sound except in one eye. The plaintiff took the mare home and became dissatisfied with her qualities and returned, and some unsuccessful attempts to exchange again were made. On December 24, 1894, the plaintiff returned to Greenville and put the mare in a stable building where the defendants kept a livery business. Plaintiff asked the defendant if he would take the mare. He replied, "Are you going to pay the mortgage note that you owe us for the mare?" Plaintiff said "No," and defendant said: "I will take the mare if you don't pay it." Plaintiff said: "If you do I will sue you." Defendant took the mare and plaintiff hired another horse to go home at night. Plaintiff sued for damages on the warranty and for the seizure of the mare.

Among other issues, the court submitted these: "8. Did defendants unlawfully seize the mare described in the complaint on December 24, 1894?" "9. What damage if any has plaintiff sustained by the seizure?"

His Honor instructed the jury: "If the defendants took the mare from Hinson (the plaintiff) after they had given him permission to take her into his possession, they had no right to do so as mortgagees, and the jury will respond to the 8th issue 'Yes.'" All the issues were found in favor of the plaintiff.

We are not informed by the argument when the note became due and payable. It would probably be correct to presume that a debt is due at the time of its creation, without any other information, but to give the plaintiff the full benefit of his contention we will assume that the seizure was prior to the maturity of the note. This raises the question whether a mortgagee of personal property can take it into his possession before the secured debt becomes due, the property having remained in the mortgagor's possession until the seizure? This depends upon the nature of the mortgage and the respective rights of the parties. In some of the states a mortgage is held by statutory regulation or judicial construction to be simply a lien, leaving the legal estate in the mortgagor. In North Carolina and many other states the common law prevails, and the mortgage deed passes the legal title at once, defeasible by the subsequent performance of its condition. The title then draws the right of possession, and the mortgagee may enter into possession of the property at once or at any time, unless restrained by express provision or necessary implication, which does not appear in the case before us. 1 Jones Mortgages, Sec. 58. "The mortgagee is entitled to immediate possession in the absence of any agreement to the contrary. He may enter upon the estate under his deed, even before condition broken, and may maintain an action against the mortgagor as a trespasser if he refuses to yield possession." 1 Jones, *supra*, (5th Ed.,) Sec. 702. "The right of possession of mortgaged chattels vests in the mortgagee immediately upon the execution of the mortgage if there be no express or implied stipulation in it to the contrary, whether the mortgage debt be due and payable or not; * * * the right of possession follows the right of

property." Jones on Chattel Mortgages, (4th Ed.,) Sec. 426 ; *Bracket* v. *Bullard*, 12 Metc., (Mass.,) 308 ; 15 Am. & Eng. Enc., 817, and note.

" Although the mortgagor is equitable owner, yet the mortgagee is more than a trustee for him, for a trustee is not allowed to 'deprive his *cestui que trust* of his possession, but a mortgagee may assume the possession whenever he pleases, if there is no agreement to the contrary, and in point of possession the mortgagor is tenant at will, even in equity, for a court of equity never interferes to prevent the mortgagee from assuming the possession." Coote on Mortgages, 379 (324). " The mortgagee, as against the mortgagor and all persons claiming under him, is taken to be the owner of the fee ; and as the right of possession follows the right of property—if there is no stipulat on to restrain it—he is entitled to possession before condition broken, and is liable to be dispossessed only by performance of the condition at the time limited." *Erskine* v. *Townsend*, 2 Mass., 493, and numerous subsequent cases in that state.

" As soon as the estate is created the mortgagee may immediately enter on the lands ; but is liable to be dispossessed, upon performance of the condition by the payment of the mortgage money at the day limited." 2 Bl. Com., 158. In consequence of this rule it became usual to stipulate or agree that the mortgagor shall hold possession till the day assigned for payment.

We are not referred to any decision of this Court, in which the precise question has been presented and discussed, but in several cases the question is assumed to be settled in the affirmative. In *Morrison* v. *McLeod*, 2 Ired. Eq., 108, RUFFIN, C. J., says : " Whatever may be the rule when a mortgagee enters into possession by receipt of the rents of premises occupied by tenants, we conceive

that when he enters by taking the actual possession and occupies himself, he makes himself tenant of the land and subjects himself to the highest fair rent, and becomes responsible for all such acts or omissions as would, under the usual leases, constitute claims on an ordinary tenant."

In *Williams* v. *Bennett*, 4 Ired., 122, RUFFIN, C. J., says: "The mortgagor was concluded by his deed, and after its execution his possession is by consent of the mortgagees and is in law their possession." In *Joyner* v. *Vincent*, 4 D. &. B., 512, the property mortgaged being a slave, RUFFIN, C. J., says: "We think that a mortgagee is not, under any circumstances, as between him and the mortgagor, obliged to take possession before a forfeiture, and thereby subject himself unnecessarily to an account."

In *Hook* v. *Fentress*, Phil. Eq., 235, PEARSON, C. J., says: "That a vendor of land, who has let the purchaser into possession and retains the legal title as a security for the payment of the purchase-money, occupies the relation of a mortgagee when the mortgagor is in possession, and has the right to take possession at any time and go into the pernancy of the profits, and may, on notice given, require the tenants to pay the rent to him to be applied to keep down the interest, and any surplus to the discharge of principal."

In *Jackson* v. *Hall*, 84 N. C., 489, the property being a mule, SMITH, C. J., says: "While the defendant invaded no right of the mortgagor in taking and keeping possession until the day of default, whether the property was or was not in danger of being lost or injured * * * and was bound to account not only for profits actually received but for the value of any reasonable and prudent use to which it could have been put without detriment to the property itself."

HINSON *v.* SMITH.

In *Coor* v. *Smith*, 101 N. G., 261, MERRIMON, J., says : " The mortgagee, as such, was entitled to the land, and in the absence of agreement to the contrary, to all the crops that might be produced upon it from year to year, * * * the defendant mortgagor remained in possession of the land, not as of right, but by permission of the mortgagee."

The principle underlying the question is that the title to property carries the right of possession, at any time, unless there is a stipulation to the contrary. This works no hardship, as the mortgagee is held to a full and strict account of the rents and use of the property, which may in some instances discharge the principal debt sooner than the mortgagor would do, when he would be entitled to possession with an unincumbered title. Allowing the plaintiff to take the mare to his home could not am unt to a stipulation to defeat the right of possession in the mortgagee. There was no agreement as to the length of time the plaintiff should keep the property, whether until the day when the note should become due or otherwise. It was a simple permission, which made the plaintiff a tenant at will or sufferance.

His Honor's instruction on the 8th issue was therefore erroneous.

The court also instructed the jury on the 9th issue that if the plaintiff suffered from the cold in making his trip to his home that night, they should award such damages on that account as they might conclude he was justly entitled to. There was error in that respect. The rule is that consequential damage in an action of *tort* must be the proximate consequence of the act and not the secondary result thereof. The latter was the result in this instance. *Sledge* v. *Reid*, 73 N. C., 440.

Error.