P. D. EBBS v. ST. LOUIS UNION TRUST COMPANY and E. W. GROVE, JR., EXECUTORS AND TRUSTEES OF THE LAST WILL AND TESTAMENT OF THE ESTATE OF EDWIN W. GROVE, AND ARTHUR SABIN.

(Filed 2 July, 1930.)

1. **Fraud A a—Knowledge and intent to deceive are necessary elements of fraud.**

Knowledge and intent to deceive are essential elements of actionable fraud, and where a real estate agent makes representations as to the character of construction of a house he is offering for sale without knowledge of their falsity, the purchaser may not maintain an action for damages for fraud and deceit, his remedy being, upon a proper showing of mutual mistake, for a rescission of the contract of purchase.

2. **Cancellation of Instruments A c—Where neither party has knowledge of falsity of representations made by one, contract may be rescinded.**

Where a real estate agent makes misrepresentations as to the character of construction of a house he is offering for sale without knowledge of their falsity, of which the purchaser is also ignorant, under proper pleadings for this relief the consummated transaction may be rescinded for the mutual mistake of the parties, and where it appears from the issues and

instructions that the verdict was rendered upon the theory that the remedy sought was to recover damages for fraud and deceit, which under the facts of the case were not recoverable, a new trial will be awarded on appeal.

CIVIL ACTION, before *Johnson, Special Judge.* From BUNCOMBE.

On or about 26 March, 1927, the plaintiffs made an offer in writing to the Grove estate to purchase a certain house for the sum of $25,000. The real estate broker securing the contract was the defendant, Arthur Sabin. It was understood at the time that a special proceeding to perfect the title would be necessary. The defendant Sabin approached the plaintiff about 20 March, 1927, stating that he had a couple of stone houses belonging to the Grove estate which he desired to sell to the plaintiff. The plaintiff accompanied the defendant Sabin and examined a stone house on Kimberly Avenue. Thereafter the plaintiff made two or three trips to examine the house, both inside and out. The house was apparently built of stone taken in its natural state and laid in a unique way, which made the appearance of the house very attractive to the plaintiff. The agent, the defendant Sabin, represented to the plaintiff "that it was a perfectly constructed house in every way." Furthermore that it was "a stone house." There were certain minor repairs to be made which the agent agreed to have made in order to satisfy the plaintiff. Thereupon the plaintiff stated to the defendant Sabin: "Well, Mr. Sabin, if this house is what you recommend it to be, a perfect house, perfectly constructed, perfect house, and you will put these other things in that I have found here I will let you offer them $25,000 and arrange the terms, name the terms myself." Thereupon the plaintiff signed the offer of purchase to be submitted to the Grove estate. The offer was accepted by the defendant representing the Grove estate. Thereafter, realizing that it would require sometime to perfect the special proceeding to pass title, the plaintiff moved into the house the first of May. On 12 September the wife of plaintiff died and the plaintiff vacated the house on 14 September, leaving the furniture therein and listing the property for sale with certain real estate agents in Asheville for the sum of $32,500. The evidence tended to show that from May until December there was very little rain. About the fist of December heavy snow and rain began falling, and the plaintiff went to the house and found that the walls were wet and dripping and that there was a leak in the sunparlor. Thereafter, on 23 December, 1927, the plaintiff wrote a letter to the Grove estate stating that he would not take the house and that it would be useless to complete the proceeding to make title and demanded the return of an initial payment of $2,500. The Grove estate declined to return the money paid at the time of sign-

ing the agreement and offered to tender deed subject to the payment of the balance of cash payment and the execution and delivery of notes for the deferred payments. Shortly thereafter the plaintiff brought a suit against the defendants alleging that Sabin was the agent of defendants and that he had represented that the house was "a perfectly constructed house in every respect, of permanent and fire-proof nature, and that upkeep of same would never amount to anything" when as a matter of fact the house was of defective construction in that the mortar or masonry had not been water proofed and that as a result thereof the exterior walls of the house absorbed water causing the floors to swell out of alignment and the basement to be flooded with water.

Plaintiff further alleged that the defendant knew or by the exercise of reasonable and ordinary diligence should have known that the house at the time of sale was not a perfectly constructed house in every particular.

Upon such allegations the plaintiff asked for a rescission of the contract and for the recovery of $2,500 paid upon the purchase price and for damages in the sum of $2,500.

The defendants filed answer denying the allegations of the complaint and asking that the plaintiff be required to specifically perform the contract of purchase. In June, 1929, the plaintiff filed an amendment to the complaint setting out the fact that the house in controversy, "instead of being a stone and masonry house," was in fact a "stone veneer house"; that is to say, a house of wooden frame enclosed by a veneering of stone laid on concrete," etc. The evidence tended to show that the plaintiff had made this discovery a day or two before the trial.

The following issues were submitted to the jury:

1. "Was the plaintiff induced to execute the contract set out in the pleadings by the false representations as to the character and condition of the house referred to in the pleadings, made by the defendant, Arthur Sabin, as agent of his codefendant, as alleged in the complaint?"

2. "If so, were said representations made by said Sabin with knowledge of their falsity, as alleged in the complaint?"

3. "Is the plaintiff entitled to have said contract rescinded as alleged in the complaint?"

4. "What sum, if any, is plaintiff entitled to receive upon a rescission of said contract?"

5. "Was the contract referred to in the pleadings fairly executed by plaintiff without the concealment or suppression of material facts on the part of the defendants, or their agent?"

6. "Are the defendants, St. Louis Union Trust Company and other trustees, entitled to specific performance of the contract as alleged in the answer?"

The jury answered the first issue "Yes," the second issue "No," the third issue "Yes," and the fourth issue "Yes, $2,500 without interest," and the fifth and sixth issues were not answered.

The evidence tended to support the allegations of plaintiff.

The evidence further tended to show that plaintiff had every opportunity to thoroughly examine the house and did thoroughly examine it, and that nothing was done to prevent a full and thorough examination of the premises before signing the contract of purchase.

The judgment upon the verdict decreed "that the contract set out in the pleadings and the paper-writing exhibited to the complaint herein be, and the same hereby is, in all respects, rescinded, canceled, vacated, and set aside, to the end that the *status quo ante* as between the parties hereto, respectively, be restored as far as may be; and that the aforesaid contract, as and wherever, if at all, the same may appear of record upon the land or court records of Buncombe County be canceled and set aside." It was further adjudged that the plaintiff recover of defendants the sum of $2,500 together with the costs of the action.

From the judgment so rendered the defendant appealed.

*Carter & Carter for plaintiff.*

*J. W. Haynes, Merrimon, Adams & Adams and J. W. Pless for defendant.*

BROGDEN, J. The evidence, issues and verdict present this situation: A real estate agent makes certain false representations as to the character and condition of a house which he proposes to sell, but these representations are made without knowledge of their falsity, and hence as a necessary consequence without intent to deceive. It is therefore apparent that this action cannot be maintained by the plaintiff as a suit for damages for fraud and deceit. Scienter and intent to deceive are essential elements of actionable fraud. *Corley Co. v. Griggs,* 192 N. C., 171, 134 S. E., 406; *Peyton v. Griffin,* 195 N. C., 685, 143 S. E., 525.

If it be conceded that the action cannot be maintained as a suit for damages for fraud and deceit, the question then arises: Can it be maintained upon the theory of rescission? Ordinarily the right to rescind a contract is built upon fraud, mutual mistake or mistake of one party induced by the fraudulent or false representations of the other.

Apparently the verdict would support a judgment for rescission upon the ground of mutual mistake, for the reason that the plaintiff did not intend to buy a stone veneer house, nor did the defendant Sabin intend to sell such a house. But the case was not tried upon that theory. *Shipp v. Stage Lines,* 192 N. C., 475, 135 S. E., 339.

The trial judge charged the jury as follows: "Now, gentlemen, if you should find from all the evidence, and by its greater weight, that the

defendants, through their agent, made a false representation with respect to this property, bearing in mind the evidence I have recited to you bearing upon this, and the law I have given you, if you should find that by the greater weight of the evidence, then it would be your duty to answer the first issue yes. If you fail to so find it would be your duty to answer it "No." Again the court charged the jury: "If you should answer the first issue, "Yes," then the court charges you, as a matter of law, that you should answer the third issue "Yes."

The first instruction quoted above is to the effect that false representation without more would warrant the rescission of a contract, and the second instruction peremptorily directs the jury to answer the third issue as to rescission upon a finding of mere false representation.

Manifestly, if rescission is sought upon the ground of fraud, then actionable fraud with all its essential elements must be found by the jury. As mistake is neither set up in the pleadings nor submitted to the jury, we are of the opinion and so hold that the defendants are entitled to a new trial. Of course, if mistake had been invoked as a ground for rescission, positive representations by the agent, even though made through inadvertence would not preclude recovery. This idea was expressed in *Long v. Guaranty Co.,* 178 N. C., 503, 101 S. E., 11. "The written agreement by which the settlement was evidenced could not well be reformed and afford full and adequate relief, but this must be done by cancellation of the instrument and rescission of the contract of compromise and settlement, which was entered into by ignorance and mistake as to the true facts, induced by the positive representation of the defendant's agent, albeit that it was made without fraud, and by the inadvertence and mistake of the agent. By its own conduct, for that of the agent is imputed to it, the defendant has induced the plaintiff to a course of action which will greatly prejudice him, if it is not reversed, he being without any fault, but being misled as to material facts by the agent's assertion in respect to them."

New trial.