ROY TARLTON AND DEWEY SMITH v. H. M. KEITH AND GRADY EARP.

(Filed 20 May, 1959.)

**1. Fraud § 4—**

   Evidence tending to show that brokers, in pointing out the land on which they had a timber option, through mistake, included timber growing on the land of another, but that the brokers stated there was some controversy as to one of the lines which would be cleared by a survey, *is held* insufficient to make out a cause of action against the brokers for fraud in inducing the purchase of the timber by plaintiffs, there

TARLTON *v.* KEITH.

being no evidence that the brokers acted in bad faith or knew that the boundaries pointed out by them were incorrect, or that the brokers represented the location of the boundaries as a positive assertion.

**2. Same—**

*Scienter* and intent to deceive are essential elements of an action for fraud.

**3. Cancellation and Rescission of Instrument § 4—**

Unilateral mistake, unaccompanied by fraud, imposition, undue influence, or other equity, is insufficient to avoid a contract.

**4. Cancellation and Rescission of Instruments § 1—**

Where the purchasers of timber have in turn sold the timber to a third party, the remedy of rescission is not available to them, since they cannot put the parties *in statu quo.*

**5. Brokers and Factors § 5:    Vendor and Purchaser § 26—**

Evidence tending to show that brokers, having an option on certain timber, pointed out the timber to plaintiffs and that in reliance on the representations as to the boundaries, plaintiffs paid the purchase price, including commission, and the owner executed timber deed to them, but that through mistake of plaintiffs and defendant brokers a part of the timber pointed out was on the land of another and was not conveyed by the timber deed, without the joinder of the makers of the timber deed or evidence of mistake on their part, is insufficient to make out a cause of action in favor of plaintiffs against the brokers to recover for the shortage.

**6. Money Received § 1—**

The general rule that money paid under a mistake of fact may be recovered ordinarily as money had and received, does not apply if the person receiving the payment is entitled in equity and good conscience to retain it.

**7. Same:    Brokers and Factors § 5—**

Where brokers, having an option on certain timber, point out the boundaries of the timber to the purchasers but through mistake of fact part of the timber pointed out is on the land of an adjacent owner, the purchasers, upon the later discovery of the mistake, are not entitled to recover of the brokers for the commission paid when the purchasers have sold the timber actually conveyed for more than they paid therefor, since the brokers in equity and good conscience are entitled to retain the commission for their services.

**8. Pleadings § 24—**

To establish a cause of action there must be *allegata* and *probata,* and the two must correspond.

APPEAL by defendants from *Olive, J.,* October Mixed Term 1958 of UNION.

Civil action to recover the sum of $3,000.00.

Plaintiffs' complaint alleges in substance: On 6 June 1957 defendants contacted Roy Tarlton, one of plaintiffs, and proposed to sell him a tract of timber in Sampson County, North Carolina. Plaintiffs and defendants met on the land, and defendants carried plaintiffs around the tract of timber, and showed them marked lines chopped with an axe, and easily discernible to the naked eye. Defendants represented to plaintiffs that the land they pointed out was the land upon which they were selling the timber; that they had an option to buy the timber for $17,500.00, and would have to have a 5% commission for selling it.

Plaintiffs, after viewing the timber, bought it, and issued their cheque in payment in the sum of $18,375.00. Plaintiffs delivered the cheque to Taylor & Morgan, attorneys at law, of Lillington, with instructions to hold it, until the title to the timber could be checked, and a timber deed made to them, and if the timber deed was good, Taylor & Morgan should turn over the cheque to defendants, and file the timber deed for recordation.

A timber deed was executed and delivered by Luby Denning and wife, the owners, to plaintiffs, conveying all pine timber on the land measuring ten inches or more in diameter, and duly recorded. Whereupon, the cheque was paid.

About a week after the timber deed was executed and delivered, plaintiffs were informed that the timber deed did not cover all the timber pointed out to them by defendants. Thereafter a survey made of the timber conveyed in the deed showed that 45 acres of fine timber pointed out by defendants as being part of the timber they offered for sale was not included in the timber deed, but belonged to the Denning estate.

Defendants knew, or in the exercise of due diligence should have known, that the 45 acres of timber was not on the land, whose timber they were offering for sale, but was on the land of the Denning estate, but they showed plaintiffs this additional 45 acres of timber with the intent and purpose of inducing plaintiffs to buy the timber they had for sale. That plaintiffs relied upon defendants' representations, and were induced thereby to pay more for the timber than they would have paid, if defendants had told them the truth about the timber.

The 45 acres of fine timber was worth $3,000.00. Wherefore, plaintiffs pray to recover that amount from defendants.

Defendants in their answer admit that they told plaintiffs the tract of timber could be bought for $17,500.00 plus a 5% commission to them, and that a survey showed that 45 acres of fine timber pointed out by them as being part of the timber plaintiffs were buying was

not included in the timber deed plaintiffs received, but belonged to the Denning estate. Defendants in their answer allege: "The said defendant Grady Earp advised and informed the plaintiffs that the approximate locations pointed out to the plaintiffs by the said Earp were those that had been represented to him by the owners of the said lands, and did then and there specifically called (sic) to the attention of the plaintiffs that there was a corner or lot of land located on the back line that did not go with the said tract and that the same would be located by the owners when the survey was made, and that at the said time it was understood and agreed between all of the parties that the transaction would not be closed until such time as the owners of the lands had completed an accurate survey of the same."

After the jury had been impaneled, and the pleadings read, defendants demurred *ore tenus* to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. In response to an inquiry from the court, counsel for plaintiffs replied that he was proceeding on tort and not on fraud. Whereupon, the court overruled the demurrer.

This is a summary of plaintiffs' evidence: Luby Denning and his wife owned the tract of timber. They sold it to defendants, but they made the deed for it to plaintiffs. Before selling it to defendants Luby Denning went back of his house, and pointed out the approximate location of the land. He did not go with them down the line, because he didn't know where it was. He had the land surveyed on 16 May 1957 and lines clearly cut all around it. When the survey was made, two of the surveying party went 25 or 30 yards beyond his corner. He doesn't know how far they chopped the line beyond his corner, but "it wasn't too long a distance in there." At the time Luby Denning received the cheque for the timber and gave the deed, the lines had been chopped out, and surveyed.

On 6 June 1957 Grady Earp contacted Roy Tarlton in regard to the sale of a tract of timber in Sampson County, North Carolina. The next day plaintiffs and defendants met, and Earp showed plaintiffs the timber.

This is a summary of Roy Tarlton's testimony: *DIRECT EXAMINATION*. "I believe there was 40 or 45 acres in the area that was pointed out to me by the defendant Earp and that not included in my deed." In his opinion, there was 100,000 feet of timber on this 40 or 45 acres, which had a market value at the time on the stump of $30.00 a thousand. *CROSS-EXAMINATION*. The first time he and Earp went to the timber it was raining. They rode along the road in a car. The road is the eastern boundary of the tract of land. Earp

pointed out to him the approximate location of the lines, saying that is where the owner pointed out to him the lines were. The next day plaintiffs and defendants went back to the timber. Plaintiffs and Earp walked around the lines. The lines around all the timber plaintiffs got by deed were cut out. Earp said, "the owner had done had it surveyed. At any rate, he told me that the owner was having it surveyed before he sold the timber." Tarlton testified: "I knew that the reason he was having it surveyed was to locate the lines. I walked all around the lines around the property that I actually got that day, except about 100 yards on the line over on the back where I showed you." Earp walked past a corner. The line was cut past that corner two or three times the width of this courtroom. Earp said the Denning estate had timber on the back line of this timber, beyond the back corner he showed us. He asked Earp if he couldn't buy that timber for him. Tarlton testified: "When Mr. Earp and myself were walking around this timber, he told me that the lines that he was pointing out to me was (sic) the lines that the owner had pointed out to him." After receiving the deed plaintiffs had the timber surveyed, and discovered their deed did not cover the 40 or 45 acres of timber belonging to the Denning estate. Earp told him, after this survey, it had been misrepresented to him, and that he had misrepresented it, and that he would make adjustment on it. A few days after plaintiffs' survey, H. M. Keith told Dewey Smith they were going to make some adjustments on it. In September he (Tarlton) saw Earp, and asked him if they would pay plaintiffs $1,000.00 to help them come out on the deal. We talked it over and decided if they (defendants) were misinformed about the line to pay us $1,000.00, and he agreed to it. He did not tell Earp that they had already sold the timber for $19,000.00, which was more than they paid for it. REDIRECT EXAMINATION. They paid for the timber by cheque for $18,375.00. Over defendants' objection and exception, Tarlton testified that he thought he was buying the 40 or 45 acres of timber of the Denning estate at the time he gave the cheque.

This is in substance the testimony of Dewey Smith: Grady Earp carried us around the boundaries, except one little place on the back side. He showed us the lines. The 45 acres of land, that were later discovered to be part of the Denning estate, was pointed out to us by him as being in the land we were buying. Over defendants' objection and exception, he testified that at the time the cheque was left with Taylor & Morgan, attorneys at law, to check the title, he thought the 45 acres was included in the land they were buying. CROSS-EX-

*AMINATION.* He walked around the timber. There was a clear path all around the timber they got under the deed.

On 20 June 1957 L. T. Bryant surveyed the timber for plaintiffs by the deed they received from Luby Denning and wife. There was about 160 acres in the tract of land. He did not survey all around the property. He found a chopped line all around the property that was included in the timber deed.

Grady Earp testified on cross-examination: "The first time I took them through there I was under the impression that this 45 acres was in the tract. . . . I showed them part of the 40-acre tract. . . . Mr. Denning pointed out to me." He also testified on direct examination: "I knew approximately where the lines were. I showed him (Tarlton) as Mr. Denning has shown me, and exactly in the same manner he had shown me. . . . I told Mr. Tarlton at the time there was a disputed area. . . . I told him of a survey being made."

H. M. Keith testified: "Mr. Smith asked me, 'don't you boys think you owe us some adjustment or some refund on this timber transaction of the Denning timber?' I said, 'if it was misrepresented, we do.' There was no further conversation to my recollection. . . . I did not misrepresent any timber to the plaintiffs."

Defendants offered other evidence in support of the allegations of their answer.

The following issues were submitted to the jury:

"1. At the time the purchase price for the timber was paid, did plaintiff reasonably understand that the timber on the Denning Estate tract was included in the acreage of timber purchased?

"2. What amount, if any, are the plaintiffs entitled to recover of the defendants?"

The jury answered the first issue Yes, and the second issue $2,000.00.

From judgment entered on the verdict, defendants appeal.

*Coble Funderburk for plaintiffs, appellees.*
*Taylor & Morgan for defendants, appellants.*

PARKER, J.   Defendants assign as error the overruling of their motion for judgment of nonsuit renewed at the close of all the evidence. G.S. 1-183.

The timber deed from Luby Denning and wife to plaintiffs is not in the Record. There is no suggestion that the description of the tract of timber in this deed was defective, or did not disclose the correct boundaries of the tract of timber, or did not convey to plaintiffs all the timber owned by Luby Denning and wife on this tract of land.

L. T. Bryant, a surveyor and witness for the plaintiffs, illustrated his testimony by a sketch of the land drawn on a blackboard. We do not have the benefit of such sketch. No copy of it was made, and inserted in the Record.

Defendants admitted in their answer that a survey made by L. T. Bryant after the timber deed was executed and delivered to plaintiffs showed that 45 acres of timber pointed out by them to plaintiffs on 7 June 1957 as being part of the timber plaintiffs were buying was not included in the timber deed, but said 45 acres of timber belonged to the Denning estate. Plaintiffs' evidence is that, when Grady Earp, one of the defendants, was pointing out the boundaries of the tract of timber to them before they purchased it, he said the lines he was pointing out were the lines the owner had pointed out to him.

Luby Denning on 16 May 1957 had his land surveyed, and his lines clearly cut all around it. When this survey was made, two of the surveying party went 25 or 30 yards beyond his corner, and chopped a line, apparently in the tract of timber of the Denning estate. It would seem that this is what caused Grady Earp to point out to plaintiffs on 7 June 1957 that the tract of 45 acres of timber of the Denning estate was part of the Luby Denning timber.

However, there is no evidence that when Grady Earp pointed out the 45 acres of timber belonging to the Denning estate as being part of the Luby Denning timber, he, or his co-defendant H. M. Keith, knew the representation was false, or that he made it recklessly, without any knowledge of its truth, and as a positive assertion. Hence, it would seem as a necessary consequence there was no intent on the part of the defendants to deceive. There is no evidence that defendants resorted to any artifice to induce plaintiffs to forego making inquiry as to the lines of the tract of timber. *Scienter* and intent to deceive are essential elements of actionable fraud. *Cofield v. Griffin,* 238 N.C. 377, 78 S.E. 2d 131; *Ebbs v. Trust Co.,* 199 N.C. 242, 153 S.E. 858. Plaintiffs' counsel acted properly in stating to the trial court that he was not proceeding on the ground of fraud, for the reason that plaintiffs' evidence, and so much of defendants' evidence as is favorable to plaintiffs, considered in the light most favorable to plaintiffs, are not sufficient to make out a case of actionable fraud.

The case was tried on the theory that if at the time the purchase price of the timber was paid, plaintiffs reasonably understood that the 45 acres of timber on the Denning estate was included in the acreage of timber bought, they were entitled to recover from defendants. And on the second issue the court instructed the jury: "The measure of damages would be the value of that timber on the Denning Estate

tract of the approximately 45-acre tract, at the time that the purchase price was paid."

The trial judge instructed the jury on the first issue, in part, substantially as follows: The plaintiffs contend that you should be satisfied by the greater weight of the evidence that the defendant Earp on 7 June 1957 pointed out the timber to them, including the timber on the 45 acres on the Denning estate, which the defendants did not have any option upon, that they paid the purchase price honestly believing that the timber they were buying included the timber on the 45-acre tract, *"that there was a mistake, and that they never did come to any meeting of the minds,"* and that the jury should answer the first issue, Yes.

Defendants had an option to buy the timber for $17,500.00, and were to have a 5% commission for selling it. When plaintiffs agreed to buy the timber, they delivered the cheque in payment for it to Taylor & Morgan, attorneys at law, with instructions to hold it, until title to the timber could be checked, and a timber deed made to them. The owners of the timber deeded it to plaintiffs. Plaintiffs do not assail the timber deed or any of its provisions. The owners of the timber conveyed by them to plaintiffs are not parties, and plaintiffs seek no relief against them. The contract was the purchase and sale of timber, consummated by deed. Certainly the makers of the timber deed are essentially involved in determining as to whether or not there was any meeting of the minds in the purchase and sale of the timber.

The theory of the trial was that if the purchase price of the timber was paid under a mistake of fact on the part of plaintiffs and defendants alone — there is no evidence and no contention that there was any mistake or any false or fraudulent representation on the part of the makers of the timber deed—, there was no meeting of the minds of the parties, and the jury should answer the first issue, Yes, and then proceed to answer the second issue.

This Court has not adopted the doctrine that unilateral mistake, unaccompanied by fraud, imposition, undue influence or like circumstances of oppression is sufficient to avoid a contract. *Cheek v. R. R.,* 214 N.C. 152, 198 S.E. 626. In that case it is said: "The mere mistake of one party alone is not sufficient to avoid the contract. (Citing authority). To have that effect, the mistake must be mutual."

In *Ebbs v. Trust Co., supra,* it is said: "Ordinarily the right to rescind a contract is built upon fraud, mutual mistake or mistake of one party induced by the fraudulent or false representations of the other."

In September 1957, or before, plaintiffs sold for $19,000.00 the tim-

ber purchased by them in June 1957 for $18,375.00. The remedy of rescission is not available to plaintiffs, because the parties cannot be placed *in statu quo. Dean v. Mattox,* 250 N. C. 246, 108 S. E. 2d 541.

Accepting as true for the purpose of considering the motion for judgment of nonsuit, the evidence of plaintiffs that they paid the purchase price for the timber under a mistake of fact on the part of plaintiffs and defendants, but not on the part of the makers of the timber deed, and in the honest belief that the 45 acres of timber belonging to the Denning estate was included in the timber they purchased, and that shortly after the purchase of the timber plaintiffs sold it for more than they paid for it, does not entitle them to avoid the contract, and to recover money from the defendants.

Generally, when money is paid to another under the influence of a mistake of fact, and it would not have been paid had the person making the payment known that the fact was otherwise, the money may be recovered. The basis of such recovery is that money paid through misapprehension of facts belongs, in equity and good conscience, to the person who paid it. 4 Am. Jur., Assumpsit, Sec. 24. In such a case the proper remedy is an action for money had and received. 4 Am. Jur., Assumpsit, p. 514. This rule is subject to certain well defined exceptions, among them, that a payment induced by mistake cannot be recovered if the payee, in equity and good conscience, is entitled to retain the money received. 40 Am. Jur., Payment, Sec. 188.

In the case *sub judice,* plaintiffs paid in June 1957 for the timber $18,375.00 — of which amount $17,500.00 was received by Luby Denning and wife, the owners of the timber, and a 5% commission amounting to $875.00 by defendants. In September 1957, or before, plaintiffs sold this timber for $19,000.00. Plaintiffs seek no recovery of the $17,500.00. The defendants by their activities consummated the sale of the timber to plaintiffs. Defendants, in equity and good conscience, are entitled to retain the 5% commission for their services. The evidence is insufficient to support a recovery from defendants for money had and received.

*McBryde v. Lumber Co.,* 246 N.C. 415, 98 S.E. 2d 663, relied upon by plaintiffs as stating the law of this case, is clearly distinguishable. That case holds that where the grantors in a timber deed go upon the land, point out the boundaries, and mark trees as being within their boundaries, both the grantors and the grantee, who cut the timber within the boundaries designated, are liable to the owner of the adjacent land for trespass as joint tort-feasors, if any of the trees so cut stood on land belonging to the adjacent owner.

To establish a cause of action there must be *allegata* and *probata,*

and the two must correspond with each other. *Lumber Co. v. Chair Co.*, 250 N. C. 71, 108 S. E. 2d 70; *Whichard v. Lipe*, 221 N. C. 53, 19 S.E. 2d 14. Plaintiffs evidence, and defendants' evidence favorable to them, considered in the light most favorable to plaintiffs, do not make out a case against defendants, and the trial judge committed error in overruling defendants' motion for judgment of nonsuit made at the close of all the evidence.

Reversed.