Waters v. Phosphate Corp.

PAUL R. WATERS and wife, ALMA M. WATERS, and WACHOVIA BANK
AND TRUST COMPANY, N.A., Trustee Under the Will of James A.
Tingle, Deceased v. NORTH CAROLINA PHOSPHATE CORPORATION,
DAVID B. ALLEMAN and wife, RUTH G. ALLEMAN, and ELIZABETH
KEYS ALLEMAN WHEELER (DIVORCED)

No. 823SC74

(Filed 1 March 1983)

1. **Appeal and Error § 68— law of the case—inapplicability to dicta**

   The doctrine of the law of the case did not apply to a statement in a prior
   appellate decision which was not necessary to the holding in that decision.

2. **Vendor and Purchaser § 4— contract to purchase land—visible easements**

   The presumption that a vendee in a contract to purchase land contracted
   to accept the land subject to visible easements of an open and notorious nature
   is rebuttable.

3. **Vendor and Purchaser § 4— contract to convey land—covenant against encum-
   brances—power company easement**

   The visible easement rule did not apply to a contract to convey land
   which required the land to be conveyed subject to no encumbrances not
   satisfactory to the buyer and which provided that the buyer should be given
   exclusive possession of the property free from the claims and interferences of
   all persons on the date of closing, and the trial court properly held that a
   power company easement on the land constituted a breach of the conditions of
   the contract.

   Judge Wells concurring in the result.

APPEAL by plaintiffs from *McKinnon, Judge.* Judgment
entered 30 September 1981 in Superior Court, PAMLICO County.
Heard in the Court of Appeals 18 November 1982.

This case arises from a contract to convey land executed by
plaintiffs and defendant North Carolina Phosphate Corporation
(Phosphate) on 30 October 1974. In the contract plaintiffs agreed
to convey and Phosphate agreed to buy a tract of land containing
approximately 1,712 acres. The land had previously been con-
veyed to plaintiffs by David B. Alleman and wife. The following
two paragraphs were in the contract:

> (5) *QUALITY OF TITLE.* . . . It is specifically understood
> and agreed that this property shall be conveyed subject to no
> encumbrances not satisfactory to BUYER, and that the same
> shall convey indefeasible fee simple and marketable title in

and to any and all mineral rights within the perimeter of said property. It is understood the the BUYER shall accept the conveyance of said property subject to 1975 ad valorem taxes.

    . . .

    (7) *POSSESSION.* BUYER shall be given the exclusive possession of the property free from the claims and interferences of all persons whomsoever at the time of closing.

After a deed was tendered to Phosphate on 17 January 1975, and rejected, plaintiffs filed a complaint seeking specific performance under the contract. In its answer Phosphate alleged that the title to the land was not marketable because the deed from the Allemans to plaintiffs contained language which purported to create a right of reentry on breach of express conditions and because the property was subject to an easement in favor of Carolina Power and Light Company (CP&L). The Allemans, in their answer, alleged a right to immediate possession of the property due to breach of the express conditions in the deed. On 9 April 1976, summary judgment in favor of plaintiffs against the Allemans was granted. This Court affirmed the judgment noting that since the language purporting to create a valid right of reentry on breach of the stated conditions was found only in the description of the deed, it was ineffectual. *Waters v. Phosphate Corp.*, 32 N.C. App. 305, 232 S.E. 2d 275, *review denied*, 292 N.C. 470, 233 S.E. 2d 925 (1977).

    When the matter came to trial, Phosphate's motion for a directed verdict at the close of plaintiffs' evidence was granted. On appeal, this Court reversed and the case was remanded for trial. *Waters v. Phosphate Corp.*, 50 N.C. App. 252, 273 S.E. 2d 517, *review denied*, 302 N.C. 402, 279 S.E. 2d 357 (1981). At retrial, the court, sitting without a jury, held that plaintiffs' title was not unmarketable on the date of closing by reason of the purported reverter clause in the deed. As to the CP&L easement, the trial court made the following findings of fact:

    2. . . . . The description of the (CP&L) right-of-way calls for a center line running almost straight north and south for approximately 8,550 feet across the property of plaintiffs, immediately adjacent to the western boundary line of plaintiffs' lands. Shortly after the entry of this judgment, Carolina

Power and Light Company established a large transmission line along this easement, clearing a right-of-way 100 feet wide of all trees and obstructions and building a line consisting of towers made of two wooden poles 40-50 feet high with cross-bars between the poles and bearing 5 transmission lines. This right-of-way and line has been continuously maintained in substantially the same condition since it was established.

3. Except for a small area at the northern end of the property, this line passes through the wooded area of plaintiffs' land and to observe it from the land, one would have to be near the right-of-way on either side. There is a woods road on the land which crosses the right-of-way, and a public road known as the Paul Road crosses the right-of-way approximately one-half mile south of plaintiffs' lands, and the existence of the power line and right-of-way as it extends onto and across plaintiffs' land is apparent from the Paul Road. There are no visible markers or landmarks to show the exact boundary of the plaintiffs' lands.

4. The power line would be clearly visible to anyone making reasonable inspection of the whole of plaintiffs' lands, and its physical character is such as to be "of a visible, open and notorious nature."

5. At the time of negotiations between Paul R. Waters and Dewey Walker, an agent of the defendant who was one of those in charge of negotiating for the purchase of the land involved in this proceeding, before the contract was entered into, Mr. Waters told Mr. Walker that there were power lines along the western boundary of the property and that he would like to go with the surveyor to be employed by the defendant to show the surveyor the boundaries.

6. Plaintiffs have not been able to offer any evidence that any representative of the defendant in fact saw the existing power line and right-of-way, and the representatives of the defendant who testified have stated that they never inspected the land or saw the right-of-way before entering into the contract, and the defendant has offered reasons why in the nature of its operations this was not necessary or customary. . . .

7. At the time of entering into negotiations for the purchase of plaintiffs' land the defendant was engaged in acquiring property for the purpose of establishing a phosphate mining operation and was seeking to obtain properties which would block a competitor from carrying out such operations in the area and which would allow the defendant to make advantageous exchanges of land for this purpose. Both the defendant and its competitor own numerous tracts of land in the vicinity of plaintiffs' land. The mining of phosphate requires the ownership and possession of contiguous tracts of land larger than the tract owned by the plaintiff, and the economic feasibility of mining phosphate requires assembling of such large parcels of land unobstructed by things such as large power line easements.

8. The existence of the easement in favor of Carolina Power and Light Company across the lands of the plaintiffs constituted a detriment to the use of this land by the defendant for phosphate mining or for exchange with others for that purpose and created a condition which was not satisfactory to the defendant as an encumbrance upon the land and as an interference with its right of exclusive possession.

9. The existence of the power lines and 100 foot right-of-way was only a portion of the easement in favor of Carolina Power & Light Company over the lands of the plaintiffs. Among other things, the easement also gave officers, agents, and workmen of Carolina Power & Light Company the right to go to and from the power lines over the entire property including private roads, and to take materials, supplies, machinery, and equipment over the said property as may be desirable to construct, reconstruct, work upon, repair, alter, or inspect said power lines, and to do any other thing necessary or convenient to maintain and operate said power lines for the transmission of electricity for public use. The easement also gave Carolina Power & Light Company the right to install guy wires and anchors outside the right-of-way and to cut some trees outside the right-of-way.

10. The defendant's evidence is sufficient to rebut any presumption that it was presumed to have contracted to accept the land subject to the existing easement of Carolina Power and Light Company.

11. The existence of the easement, as well as the existence of the reverter clause, was given as a reason for the refusal of the defendant to accept the deed tendered by the plaintiffs at the time for closing.

In addition to concluding the easement was an encumbrance and Phosphate did not have notice of the entire rights and obligations thereunder the trial court made the following conclusions of law:

5. Under the contract, the defendant had the right to determine the nature and extent of any easements and the encumbrance created thereby, prior to closing the purchase, and to waive the existence of any encumbrances which were satisfactory to it and not real interferences with its use of the property, and to object to any encumbrances not satisfactory to it or which prevented the defendant from being given the exclusive possession of the property free from claims and interferences of all persons whomsoever at the time of the closing.

6. The easement was not beneficial to the defendant in its proposed use of the property and constituted more than a minor detriment to it and was not satisfactory to the buyer, and the defendant did not unreasonably refuse to accept the tender of the deed because of this encumbrance.

7. The existence of this easement at the time of closing was a breach of the condition of the contract that the property be conveyed subject to no encumbrances not satisfactory to the buyer and of the condition that the buyer be given the exclusive possession of the property free from the claims and interferences of all persons whomsoever at the time of the closing, and the defendant was justified in refusing to accept the deed tendered by the plaintiffs.

The court decreed that plaintiffs were not entitled to specific performance of the contract between the parties.

*Gaylord, Singleton & McNally, by Louis W. Gaylord, Jr., and Danny D. McNally, for plaintiff appellants.*

*Sumrell, Sugg & Carmichael, by Fred M. Carmichael and Rudolph A. Ashton, III, for defendant appellee.*

VAUGHN, Chief Judge.

[1] Plaintiffs argue that the trial court erred in admitting evidence and making findings of fact and conclusions of law regarding the CP&L easement. They contend that this Court had previously ruled on this issue in *Waters II* and the trial court was bound by that decision under the doctrine of law of the case.

In general, when an appellate court decides a question and remands the case for further proceedings, the questions determined by the appellate court become the law of the case, both in subsequent proceedings in the trial court, and on appeal. *Bruce v. O'Neal Flying Service, Inc.*, 234 N.C. 79, 66 S.E. 2d 312 (1951). The doctrine of law of the case does not apply to dicta, but only to points actually presented and necessary to the determination of the case. *Hayes v. City of Wilmington*, 243 N.C. 525, 91 S.E. 2d 673 (1956).

In *Waters II* this Court reversed the judgment directing verdict in Phosphate's favor. Since Phosphate did not state specific grounds for its motion, this Court examined every possible basis for the motion to determine whether the evidence was sufficient to go to the jury. The directed verdict was reversed on the following grounds: the purported reverter clause had previously been deemed ineffectual; the evidence presented regarding a 1960 judgment creating a canal corporation was insufficient to justify a directed verdict; and plaintiffs had presented sufficient evidence to submit to the jury the issue of whether the CP&L easement constituted a visible easement. With regard to this last issue, this Court noted:

> If the CP&L easement is found by the jury to be a visible easement, defendant would be deemed to have entered the contract to convey intending to take subject to the easement and defendant could not assert the CP&L easement as a reason to refuse to perform the contract.

*Waters II*, 50 N.C. App. at 256, 273 S.E. 2d at 520. Since the sole issue before the court was whether there was sufficient evidence to go to the jury, the above statement, which is more applicable to covenants against encumbrances in a deed than to contracts, was not necessary to the holding and was not binding on the subsequent trial.

[2]  In this case, the findings of fact regarding the CP&L ease-
ment, particularly as to its visibility, CP&L's entire rights there-
under, and Phosphate's knowledge of these rights, were clearly
relevant to decide the issue of whether the easement was of a
visible, open and notorious nature. The evidence showed, and
Judge McKinnon properly concluded, that the easement consisted
of more than the visible power lines and right-of-way; and that
Phosphate was not given notice of the entire rights of CP&L. We
also find no error in the trial court's interpretation of the rules as
established by *Waters II.* Judge McKinnon further concluded that
the presumption that a vendee in a contract to purchase land is
presumed to have contracted to accept the land subject to visible
easements of an open and notorious nature, is rebuttable. This in-
terpretation is consistent with the following statement in 77 Am.
Jur. 2d *Vendor and Purchaser,* § 222 at 399 (1975): "In the or-
dinary case the vendee is presumed to have contracted to accept
the land subject to visible easements of an open and notorious
nature, although it would seem that the circumstances may be
such as to repel this presumption. . . ." "Where the vendee pro-
tects himself against encumbrances by a positive covenant that
the premises shall be conveyed clear of all encumbrances, the
vendor does not comply with the contract by tendering a con-
veyance where the land is subject to a visible easement, even
though the vendee knew of it." In *Waters II* this Court quoted
this first sentence but omitted that portion beginning with
"although."

Plaintiffs' reliance on *Hawks v. Brindle,* 51 N.C. App. 19, 275
S.E. 2d 277 (1981), for their argument that the presumption is ir-
rebuttable, is misplaced. *Hawks* involved a breach of the covenant
against encumbrances found in a *general warranty deed.* In
*Hawks,* this Court reversed the judgment directing verdict in
defendants' favor on the breach of covenant against encum-
brances because there was no evidence that either plaintiffs or
defendants knew that the tract of land was subject to a highway
right-of-way. This Court, citing *Goodman v. Heilig,* 157 N.C. 6, 8-9,
72 S.E. 866, 867 (1911) applied the following rule of law:

> The rule in North Carolina appears to be that a covenantee
> may not recover for breach of the covenant against encum-
> brances where the encumbrance he alleges is a public
> highway or railroad right-of-way and *either* (1) the covenan-

tee purchased the property with *actual knowledge* that it was subject to the right-of-way or (2) the property was *"obviously and notoriously* subjected at the time to some right of easement or servitude . . . ." (Emphasis added.)

*Hawks v. Brindle,* 51 N.C. App. at 24, 275 S.E. 2d at 281.

[3] In this case we are dealing with a contract to convey land where the parties expressly agreed that the land would be conveyed subject to no encumbrances not satisfactory to Phosphate and to give Phosphate "exclusive possession of the property free from the claims and interferences of all persons whomsoever at the time of closing." In the contract Phosphate waived no encumbrance other than an existing agricultural lease. By entering into this contract, Phosphate provided itself with an opportunity to investigate the property and any encumbrances thereon before closing. The very purpose of the aforementioned terms was to protect Phosphate against any unsatisfactory encumbrances. To hold that Phosphate was only protected against unknown encumbrances would rob the contract of its value and destroy the force of its language. Under the terms of the contract between the parties, the visibility of the easement would be immaterial. The question before the trial court involved the interpretation of this contract. On remand the trial court made findings of fact determining both issues. Since the evidence supports the findings of fact, and these findings of fact support the conclusions of law, we affirm the judgment. In light of this holding we deem it unnecessary to discuss defendant Phosphate's cross-assignments of error.

For the reasons stated above, the judgment of the trial court is

Affirmed.

Judge WELLS concurs in the result.

Judge WHICHARD concurs.

Judge WELLS concurring in the result.

I disagree with the majority reasoning, but agree with the result reached.

I am persuaded that in *Waters v. Phosphate Corp.*, 50 N.C. App. 252, 273 S.E. 2d 517, *disc. rev. denied*, 302 N.C. 402, 279 S.E. 2d 357 (1981), this Court clearly held that the visible easement rule applies to contracts to convey land, as well as to deeds of conveyance. I take that to be the law of this case, as well as the law of this jurisdiction. The rule, correctly applied, requires that the visible easements, *known* to the vendee, will not excuse performance by the vendee. Judge McKinnon found that the CP&L easement, while having visibility, had characteristics not known to the vendee in this case, *e.g.*, rights of ingress and egress, etc. (see paragraph nine of Judge McKinnon's order). The evidence supports this finding, and this finding supports Judge McKinnon's conclusions of law, which support his judgment. For these reasons, I concur in the result.