LETA PEARCE, ON HER OWN BEHALF AND IN HER CAPACITY AS ADMINISTRATRIX AND NORTH CAROLINA ANCILLARY ADMINISTRATRIX OF THE ESTATE OF DOUGLAS ALLEN PEARCE v. AMERICAN DEFENDER LIFE INSURANCE COMPANY

No. 8410SC1045

(Filed 21 May 1985)

1. **Insurance § 14 — life insurance — accidental death rider — exclusion for death in military aircraft — judgment n.o.v. for defendant proper**

    Judgment n.o.v. was properly granted in favor of defendant insurance company where plaintiff's husband had bought a $20,000 life insurance policy with a $40,000 accidental death rider; the rider contained exclusions for aircraft crew members and for military aircraft; plaintiff's husband inquired about his coverage after he joined the Air Force; a representative of defendant replied that the basic program was in effect regardless of occupation, that the accidental death rider would remain in effect while plaintiff's husband was in the Air Force but would not cover death resulting from an act of war, and did not mention other exclusions in the rider; plaintiff's husband died eight years later from an accident involving a military aircraft on which he was a crew member but not involving an act of war; and defendant paid the $20,000 basic coverage but refused payment on the accidental death rider. The application of the doctrines of waiver or estoppel on these facts would essentially rewrite the policy, extending coverage to a risk expressly excluded and obligating defendant to pay a loss for which it charged no premium.

2. **Insurance § 8 — life insurance — modification — authority of employee**

    Plaintiff did not introduce sufficient evidence that defendant's employee had actual or apparent authority to modify the contract to bring the death of plaintiff's husband within the coverage of an accidental death rider which contained an exclusion for military aircraft where plaintiff's husband had inquired about the extended coverage after he had joined the Air Force and an

Pearce v. American Defender Life Ins. Co.

employee of defendant responded that the basic policy was in full force and that the rider would be payable should death occur while in the armed forces but not if death occurred as the result of an act of war. The contract of insurance contained an express limitation on the authority of any person other than the president, vice president, or secretary of the company to modify or waive the contract provisions; consequently, the insured had notice of the extent and scope of the employee's authority.

**3. Unfair Competition § 1— life insurance—inquiry into extent of coverage—exclusion not addressed**

There was no error in the dismissal of plaintiff's claims based on fraud and unfair trade practices where plaintiff's husband had inquired into the extent of his coverage under a life insurance policy after he joined the Air Force; an employee of defendant replied that the basic policy for $20,000 was in full force, that an accidental death rider would be payable while he was in the armed forces but not if death occurred as a result of war, and did not mention other exclusions in the rider; defendant's husband died in a military aircraft accident not resulting from an act of war; and defendant paid the claim under the basic policy but denied coverage under the rider because of exclusions for crew members in military aircraft.

APPEAL by plaintiff from *Ellis (B. Craig), Judge*. Judgment entered 23 May 1984 in Superior Court, WAKE County. Heard in the Court of Appeals 8 May 1985.

This is a civil action wherein plaintiff seeks to recover $40,000 pursuant to an insurance contract entered into by defendant and plaintiff's deceased husband. The record reveals the following undisputed facts:

On 4 June 1968 defendant issued a life insurance policy to Douglas Allen Pearce. The policy provided that plaintiff, as the designated beneficiary under the policy, would receive $20,000 in the event of her husband's death. Mr. Pearce purchased additional coverage in the form of an "Accidental Death Rider," which provided for payment of an additional $40,000 in the event of the insured's accidental death, subject to exceptions set out in the Accidental Death Rider as follows:

EXCEPTIONS: This agreement does not cover death or injuries resulting directly or indirectly from: (a) travel or flight in or descent from any species of aircraft if (i) you are a pilot, officer, or other member of the crew of such aircraft, are giving or receiving any kind of training or instruction, or have any duties whatsoever aboard such aircraft while in flight, or (ii) the aircraft is maintained or operated for military or naval

purposes, or (b) military, naval, or air service or any allied branch thereof of any country at war, or (c) the commission of a felony, or (d) intentionally self inflicted injuries or suicide while sane or insane, or (e) war, participation in a riot, insurrection or any act incident thereto, either on land or water.

In 1971 Mr. Pearce entered the United States Air Force. In May, 1971, defendant received the following letter:

4 May 1971

American Defender Life Insurance Company
P. O. Box 2434
Raleigh, North Carolina 27602

Re: Douglas Allen Pearce, Pol. No. 82-0058

Gentlemen:

Lt. Pearce signed an application in 1968 for $20,000 and he is concerned as to whether or not he is fully covered now that he is in the USAF. He is a 2nd Lt. enrolled in The Navigation School at Mather, Ca. He is flying the T-29 which is a trainer for the Nav School. He has flown 6 hours so far and expects to fly approximately 250 hours during the next 12 months. After graduation he does not have any idea as to which plane he will be assigned.

Will you please check over his coverage and advise us. I feel sure that he is fully covered, however, to make him feel at ease and appreciate his policy and its protection—he would like to have it spelled out over the signature of one of your executives.

Thanks for your usual very prompt service.

Sincerely,

C. L. Dickerson

The letterhead of this letter indicates that Mr. Dickerson was employed by "Military Associates Incorporated," "Specialists in Military Financial Planning." The record contains no other information about Mr. Dickerson.

On 12 May 1971 defendant responded to Mr. Dickerson's letter by mailing the following letter to Mr. Pearce:

**Pearce v. American Defender Life Ins. Co.**

May 12, 1971

Mr. Douglas Allen Pearce
10484 Investment Circle, #40
Rancho Cordova, California 95610

Policy Number: 82-0058

Dear Mr. Pearce:

We have received Mr. C. L. Dickerson's letter of May 4, 1971, concerning the coverage of your above numbered policy.

Your policy has a $20,000.00 College Defender Program with a $40,000.00 Accidental Death and Dismemberment Rider, $10,000.00 Guaranteed Insurability Option. Your program does not contain a war clause. In other words, the basic program is in full force and effect regardless of your occupation. The Accidental Death Rider portion of the policy would not be payable should your death occur as the result of a direct act of war. However, in addition to the basic policy, this Accidental Death Rider would also be payable should his death occur while in the Armed Forces but not as the result of an act of war.

Should this letter not fully answer your questions or if you would like additional information, please write directly to us or call us collect.

Sincerely yours,

(Miss) Linda Wynne
Policyowners' Service

Mr. Pearce continued to make premium payments under the policy until his death on 24 July 1979. Mr. Pearce's death resulted from an accident involving a military aircraft on which he was a crew member; he did not die as the result of an act of war. Following the death of the insured, defendant paid plaintiff, as beneficiary, $20,000 under the basic policy; defendant has refused to pay plaintiff the additional $40,000 she claims under the Accidental Death Rider, asserting that the provision set out in subsection (a) of the Exceptions section of the policy relieves it of any obligation to make such payments.

On 25 February 1982 plaintiff instituted this action by filing a complaint in which she alleged nine claims for relief, including claims based on fraud, unfair trade practices, estoppel, waiver, and negligence. Defendant filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), N.C.R.C.P. Judge Brewer allowed defendant's 12(b)(6) motion by order entered 9 July 1982. This court "vacated" Judge Brewer's order and remanded the case for further proceedings in an opinion filed 21 June 1983. *See Pearce v. American Defender Life Ins. Co.*, 62 N.C. App. 661, 303 S.E. 2d 608 (1983). The matter came on for trial before a jury at the 14 May 1984 session of Superior Court, Wake County. At the close of plaintiff's evidence Judge Ellis granted defendant's motion for a directed verdict on plaintiff's claims based on fraud and unfair trade practices. At the close of all the evidence the following issue was submitted to and answered by the jury as indicated:

> Was the insured's death covered under that portion of the insurance policy issued by the defendant, which provided for the payment of $40,000 to the beneficiary in the event of the insured's accidental death?

ANSWER: Yes.

By motion dated 17 May 1984 defendant moved for judgment notwithstanding the verdict pursuant to Rule 50, N.C.R.C.P. On 23 May 1984 Judge Ellis allowed defendant's motion and entered judgment in favor of the defendant. Plaintiff appealed.

*Akins, Mann, Pike & Mercer, P.A., by J. Jerome Hartzell, for plaintiff, appellant.*

*Smith Moore Smith Schell & Hunter, by Ted R. Reynolds and Benjamin F. Davis, Jr., for defendant, appellee.*

HEDRICK, Chief Judge.

We note at the outset that plaintiff relies heavily on this Court's prior decision, in which we "vacated" the order dismissing plaintiff's complaint for failure to state a claim, in support of her contention that the court erred in granting defendant's motion for judgment notwithstanding the verdict. Plaintiff contends that our holding in the first appeal of this case is binding on this Court on this second appeal, *citing N.C.N.B. v. Virginia Carolina Builders,*

307 N.C. 563, 299 S.E. 2d 629 (1983). "The doctrine of law of the case does not apply to dicta, [however,] but only to points actually presented and necessary to the determination of the case." *Waters v. Phosphate Corp.*, 61 N.C. App. 79, 84, 300 S.E. 2d 415, 418 (1983), *modified and aff'd*, 310 N.C. 438, 312 S.E. 2d 428 (1984). We have carefully scrutinized Judge Hill's opinion in this case, and note that this Court went to some length to clearly delineate what it was — and what it was not — deciding in holding that plaintiff's complaint, liberally construed, states a claim upon which relief might be granted:

> Both parties expend considerable effort in their respective arguments proceeding from the premise that the exchange of letters in May of 1971 somehow broadens the coverage of the policy, creating attendant problems of agency and contract law. *Without passing on the merits of these contentions*, our reading of plaintiff's Complaint and the letters therein establishes to our satisfaction that plaintiff has, at the very least, pleaded no insurmountable bar to her claim.

*Pearce v. American Defender Life Ins. Co.*, 62 N.C. App. 661, 665, 303 S.E. 2d 608, 610 (1983) (emphasis added). While this Court has held that plaintiff's complaint discloses no insurmountable bar to recovery under at least one of her nine claims for relief, our inquiry in reviewing the court's entry of judgment notwithstanding the verdict in favor of defendant is a very different one: Is the evidence introduced at trial, viewed in the light most favorable to plaintiff, insufficient as a matter of law to support the jury's verdict in plaintiff's favor? *Summey v. Cauthen*, 283 N.C. 640, 197 S.E. 2d 549 (1973). For the reasons set forth below, we hold that the court did not err in granting defendant's motion for judgment notwithstanding the verdict.

[1] We begin our analysis by pointing out that the policy provision in question, which excepts from coverage death resulting from travel in an aircraft if the insured is a flight crew member, is unambiguous. Plaintiff does not contend that the policy, considered as written, independent of the exchange of letters in 1971, obligates defendant to make payment to plaintiff under the Accidental Death Rider. Plaintiff's claim, instead, is that defendant is estopped from relying on the aircraft exception, or that defendant has waived that portion of the insurance contract, or that that

portion of the insurance contract was modified by the exchange of letters in 1971.

The doctrines of "waiver" and "estoppel," although related, are conceptually distinct. Waiver is "the voluntary, intentional relinquishment of a known right," Appleman 16B Insurance Law and Practice Sec. 9081 (1981), while estoppel "refers to an abatement raised by law of rights and privileges of the insurer where it would be inequitable to permit their assertion." *Id.* Waiver is available only when the evidence shows that the insurer *intentionally* relinquished its rights under the insurance contract. *Id.* Estoppel, on the other hand, "necessarily implies prejudicial reliance of the insured upon some act, conduct, or nonaction of the insurer." *Id.* Our courts have often held that forfeiture provisions in an insurance contract may be waived by the insurer, or that the company may, because of its conduct, be estopped from relying on such provisions so as to avoid its obligations under the policy. *See, e.g., Durham v. Cox,* 65 N.C. App. 739, 310 S.E. 2d 371 (1984); *Thompson v. Insurance Co.*, 44 N.C. App. 668, 262 S.E. 2d 397, *disc. rev. denied,* 300 N.C. 202, 269 S.E. 2d 620 (1980). While these doctrines sometimes have been relied upon to prevent forfeiture, the rule is well settled that

> The doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom; and the application of the doctrine in this respect is, therefore, to be distinguished from the waiver of, or estoppel to deny, grounds of forfeiture.

*Hunter v. Insurance Co.*, 241 N.C. 593, 595, 86 S.E. 2d 78, 80 (1955) (quoting 29 Am. Jur. *Insurance* Sec. 903). "The theory underlying this rule seems to be that the company should not be required by waiver and estoppel to pay a loss for which it charged no premium. . . ." Annot., 1 A.L.R. 3d 1139, 1144 (1965).

In the instant case, the Accidental Death Rider provides for the payment of an additional $40,000 in the event the insured dies as the result of an accident, and expressly exempts from coverage death resulting from an accident involving an aircraft on which the insured serves as a crew member. We think it clear that application of the doctrines of waiver or estoppel on these facts

would essentially rewrite the policy, extending coverage to a risk expressly excluded therefrom, and obligating defendant to pay a loss for which it charged no premium. This we cannot do.

[2] We next consider whether plaintiff introduced sufficient evidence that defendant's agent, Miss Wynne, had actual or apparent authority to modify the insurance contract so as to bring Mr. Pearce's death within the scope of coverage. The following provision appears in the policy:

> No alteration of this Policy and no waiver of any of its provisions shall be valid unless made in writing by us and signed by our President, Vice President, or Secretary.

Assuming *arguendo* that the statements made by Miss Wynne in her letter of 12 May 1971 would, if made a part of the insurance contract, constitute a *modification* of the contract provisions, the record contains undisputed evidence showing that Miss Wynne had no actual authority to make such a modification. She was not the president, vice president, or secretary of defendant corporation at the time she wrote the letter in question, and she testified that she had no authority to extend coverage beyond that provided in the insurance contract. In her brief plaintiff concedes that "Miss Wynne may not have had actual authority to modify Plaintiff's decedent's insurance coverage," but contends that "Mr. Pearce could, in the exercise of reasonable care, have concluded Miss Wynne had authority to speak for and bind the company." Plaintiff further argues that the policy provision governing the manner in which the contract terms could be modified or waived "should not bar plaintiff's decedent from being able to rely on Miss Wynne's written explanation of the policy provisions."

"It is true that a principal, who has clothed his agent with apparent authority to contract in behalf of the principal, is bound by a contract made by such agent, within the scope of such apparent authority, with a third person who dealt with the agent in good faith, in the exercise of reasonable prudence and without notice of limitations placed by the principal upon the agent's authority." *Lucas v. Stores*, 289 N.C. 212, 220, 221 S.E. 2d 257, 262 (1976). "This rule, however, has no application where . . . the third party . . . knew or in the exercise of reasonable care should have known that the agent was not authorized to enter into the contract." *Id.* at 220-21, 221 S.E. 2d at 263. "Any apparent authority

that might otherwise exist vanishes in the presence of the third person's knowledge, actual or constructive, of what the agent is, and what he is not, empowered to do for his principal." *Rollins v. Miller Roofing Co.*, 55 N.C. App. 158, 161, 284 S.E. 2d 697, 700 (1981) (citation omitted). *See also Bynum v. Blue Cross and Blue Shield*, 28 N.C. App. 515, 519, 222 S.E. 2d 263, 266 (1976) (citation omitted) ("The authority of an agent with limited power to waive the terms and conditions of written policies of insurance in the absence of fraud or mistake or other compelling equitable principle is ordinarily restricted to negotiations connected with the inception of the contract and not to provisions of a written contract which has already taken effect and been in force for a period of time.").

In the instant case, the contract of insurance contains an express limitation on the authority of any person other than the president, vice president, or secretary of the company to modify or waive the contract provisions. Consequently, the insured had notice of the extent and scope of Miss Wynne's authority. While it is true that the written limitation of authority in question might itself have been waived or modified by "a subsequent parol agreement, or by conduct which naturally and justly [led] the other party to believe the provisions of the contract [were] modified or waived," *Childress v. Trading Post*, 247 N.C. 150, 154, 100 S.E. 2d 391, 394 (1957) (citation omitted), plaintiff introduced no evidence tending to show statements or conduct by defendant resulting in such waiver or modification. Mr. Pearce must therefore be held to have acted unreasonably in concluding that Miss Wynne had authority to bind the company in the face of clear written notice to the contrary. For this reason, plaintiff's claim in this regard must fail.

[3] Plaintiff next contends that the trial court erred in granting defendant's *motion for a directed verdict on plaintiff's claims* based on fraud and unfair trade practices under G.S. 75-1.1 and G.S. 58-54.1. Plaintiff's contentions as to fraud require little discussion: the record is entirely devoid of any evidence that defendant at any time made a false representation to Mr. Pearce. Scrutiny of the 12 May 1971 letter written by Miss Wynne reveals no statement that may be characterized as false. We need not discuss the remaining evidentiary gaps justifying the court's entry of a directed verdict in connection with this claim for relief.

Plaintiff's contentions in regard to her claim of unfair trade practices require more discussion. G.S. 75-1.1 in pertinent part provides: "[U]nfair or deceptive acts or practices in or affecting commerce . . . are declared unlawful." G.S. 58-54.4, on which plaintiff also relies, in pertinent part provides:

> The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:
>
> (1) Misrepresentations and False Advertising of Policy Contracts. — Making, issuing, circulating . . . any estimate, illustration, circular or statement misrepresenting the terms of any policy issued. . . .

In *Johnson v. Insurance Co.*, 300 N.C. 247, 266 S.E. 2d 610 (1980), the Supreme Court said: "An act or practice is deceptive . . . if it has the capacity or tendency to deceive. . . . Proof of actual deception is unnecessary. . . . Though words and sentences may be framed so that they are literally true, they may still be deceptive. In determining whether a representation is deceptive, its effect on the average consumer is considered." *Id.* at 265-66, 266 S.E. 2d at 622. The question of whether a particular act or practice is unfair or deceptive is a matter of law, to be determined by the court. *Bernard v. Central Carolina Truck Sales*, 68 N.C. App. 228, 314 S.E. 2d 582, *disc. rev. denied*, 311 N.C. 751, 321 S.E. 2d 126 (1984).

When the statements made by defendant in its May 1971 letter are considered in connection with the letter written by Mr. Pearce's agent in light of the rules of law discussed above, we do not believe these statements are deceptive. We first note that Mr. Dickerson's letter refers to Mr. Pearce's "application in 1968 for $20,000," and thus appears to be an inquiry not about the Accidental Death Rider, but rather about the basic life insurance policy. We further note that Mr. Dickerson's letter does not specifically refer to or make inquiry about the aircraft exception contained in the Accidental Death Rider. The letter instead sets out facts about Mr. Pearce's military service, and inquires as to whether Mr. Pearce "is fully covered now that he is in the USAF." The letter written by defendant in response to Mr. Dickerson's inquiry states that "the basic program is in full force and effect regardless of your occupation." Although Mr. Dickerson

had not asked specifically about the provisions of the Accidental Death Rider, or the exceptions to coverage under that portion of the policy, defendant also explained that additional benefits for accidental death would not be payable should Mr. Pearce die as the result of a direct act of war. Then, in a statement asserted by plaintiff to be deceptive, defendant stated, "However, in addition to the basic policy, this Accidental Death Rider would also be payable should his death occur while in the Armed Forces but not as the result of an act of war."

We do not believe the average consumer would understand the above-quoted statement, considered in context, to mean that the remaining exceptions to coverage set out in the Accidental Death Rider no longer applied. In addition to the "aircraft exception," the Rider also excepts deaths resulting from the commission of a felony, intentionally self-inflicted injuries, and participation in a riot or insurrection. Defendant was not required to discuss all of these exceptions in its letter to Mr. Pearce in order to avoid being "deceptive" in discussing the "act of war" exception. We hold the court did not err in entering a directed verdict for defendant on these claims.

Plaintiff concedes that we need consider the remaining questions presented only if we hold that plaintiff is entitled to a new trial. Consequently, we do not consider the remaining assignments of error.

The judgment appealed from is

Affirmed.

Judges WEBB and WHICHARD concur.