LETA PEARCE, on her own behalf and in her capacity as Administratrix and North Carolina Ancillary Administratrix of the Estate of Douglas Allen Pearce v. AMERICAN DEFENDER LIFE INSURANCE COMPANY

No. 468PA85

(Filed 6 May 1986)

1. **Insurance § 14— life insurance—accidental death rider—exclusion for death in aircraft—judgment n.o.v. proper**

    The trial court correctly granted defendant's motion for judgment n.o.v. as to a breach of contract claim arising from an accidental death rider to a life insurance policy on an Air Force flyer where the claim was based on estoppel, waiver, actual or apparent authority of defendant's employee to contract with a client for defendant, and ratification.

2. **Insurance § 8— life insurance—exclusion—ratification of coverage by acceptance of premiums**

    The trial court did not err in an action arising from an accidental death rider to a life insurance policy covering an Air Force flyer by refusing to instruct the jury on ratification where the insured had inquired about his coverage, received a reply which could be interpreted to state that he was covered, and continued to pay premiums for eight years until his death. Defendant continued to provide coverage under the rider for injuries or death resulting from unexcepted causes.

3. **Appeal and Error § 22.1— discretionary review—claims not briefed in Court of Appeals—not properly before Supreme Court**

    Claims against an insurance company based upon negligence, breach of fiduciary duty, and breach of the duty to investigate claims in a fair and equitable manner arising from an exclusion to an accidental death rider on a

life insurance policy were not briefed in the Court of Appeals and were not properly before the Supreme Court. N.C. App. Rule 16.

**4. Insurance § 14— life insurance—aircraft exclusion—fraud—directed verdict proper**

The trial court did not err by directing verdict against plaintiff's claim based on fraud in an action arising from an exclusion to an accidental death rider to a life insurance policy for aircraft crew members where the insured had written defendant inquiring about coverage and a reply had been written which could be interpreted as stating falsely that the insured would be covered if he died in an airplane crash. Whether the misstatement was the result of inartful wording or of intentional misleading would be purely a matter of conjecture.

**5. Unfair Competition § 1— insurance—unfair or deceptive trade practice**

A violation of N.C.G.S. 58-54.4 as a matter of law constitutes an unfair or deceptive trade practice in violation of N.C.G.S. 75-1.1.

**6. Unfair Competition § 1; Evidence § 34.5— statement of insured regarding coverage—not hearsay**

In an action arising from an exclusion in an insurance policy for aircraft crew members, the testimony of a widow that her husband had said he was covered while on flying status was not inadmissible hearsay and was relevant because the remarks were not offered to prove the fact of coverage, but to demonstrate the insured's state of mind and the fact of his reliance on a letter from defendant. N.C.G.S. 8C-1, Rules 803(3) and 801(c).

**7. Unfair Competition § 1— insurance—extent of coverage—evidence of deceptive trade practice sufficient**

There was sufficient evidence of an unfair trade practice to survive a motion for a directed verdict in an action arising from an exclusion to an accidental death rider for aircraft crewmen. N.C.G.S. 58-54.4.

Justice MEYER concurring in part and dissenting in part.

ON plaintiff's petition for discretionary review of the decision of the Court of Appeals, 74 N.C. App. 620, 330 S.E. 2d 9 (1985), affirming judgment entered by *Ellis, J.,* at the 14 May 1984 session of Superior Court, WAKE County. Heard in the Supreme Court 10 February 1986.

*Graham & James, by J. Jerome Hartzell and Charles H. Mercer, Jr., for plaintiff appellant.*

*Smith, Moore, Smith, Schell & Hunter, by Ted R. Reynolds and Benjamin F. Davis, Jr., for defendant appellee.*

MARTIN, Justice.

In 1968 plaintiff's decedent, Douglas Allen Pearce, then a college student, purchased a $20,000 life insurance policy from the American Defender Life Insurance Company (American Defender). Pearce also purchased an accidental death rider, which provided for the payment of an additional $40,000 if he were to be injured or to die by accident. The rider specifically excepted from coverage death or injuries resulting under certain circumstances, including

> (a) travel or flight in or descent from any species of aircraft if (i) you are a pilot, officer, or other member of the crew of such aircraft while in flight, or (ii) the aircraft is maintained or operated for military or naval purposes . . . .

In 1971 Pearce entered the Air Force. In May of that year American Defender received the following letter from C. L. Dickerson, who, according to the letterhead, was an employee of "Military Associates, Inc.," "Specialists in Military Financial Planning," dealing in "Financial Programming, Investments, [and] Insurance."

4 May 1971

American Defender Life Insurance Company
P. O. Box 2434
Raleigh, North Carolina 27602

Re: Douglass Allen Pearce, Pol. No. 82-0058

Gentlemen:

Lt. Pearce signed an application in 1968 for $20,000 and he is concerned as to whether or not he is fully covered now that he is in the USAF. He is a 2nd Lt. enrolled in The Navigation School at Mather, Ca. He is flying the T-29 which is a trainer for the Nav School. He has flown 6 hours so far and expects to fly approximately 250 hours during the next 12 months. After graduation he does not have any idea as to which plane he will be assigned.

Will you please check over his coverage and advise us. I feel sure that he is fully covered, however, to make him feel at ease and appreciate his policy and its protection — he would

like to have it spelled out over the signature of one of your executives.

Thanks for your usual very prompt service.

Sincerely,

C. L. Dickerson

cld:pp

Within two weeks, Pearce received the following response:

May 12, 1971

Mr. Douglas Allen Pearce
10484 Investment Circle, #40
Rancho Cordova, California 95610

Policy number: 82-0058

Dear Mr. Pearce:

We have received Mr. C. L. Dickerson's letter of May 4, 1971, concerning the coverage of your above numbered policy.

Your policy has a $20,000.00 College Defender Program with a $40,000.00 Accidental Death and Dismemberment Rider, $10,000.00 Guaranteed Insurability Option. Your program does not contain a war clause. In other words, the basic program is in full force and effect regardless of your occupation. The Accidental Death Rider portion of the policy would not be payable should your death occur as the result of a direct act of war. However, in addition to the basic policy, this Accidental Death Rider would also be payable should his death occur while in the Armed Forces but not as the result of an act of war.

Should this letter not fully answer your questions or if you would like additional information, please write directly to us or call us collect.

Sincerely yours,

(Miss) Linda Wynne
Policyowners' Service

LEW/yaw

bcc: Mary Feiton
     Arden French

Pearce was killed in a flight training mission off the coast of England in 1979. His widow, the beneficiary of Pearce's policy with American Defender and plaintiff in this suit, informed the company of her husband's death and received a check for $20,000. American Defender refused to pay her benefits under the accidental death rider, referring her to the exceptions paragraph and to a paragraph in the general provisions portion of the basic policy, which stated in pertinent part, "No alteration of this policy and no waiver of any of it's [sic] provisions shall be valid unless made in writing by us and signed by our President, Vice President or Secretary."

Mrs. Pearce timely filed a complaint alleging claims for relief based upon unfair trade practices, breach of contract, breach of fiduciary duty, negligence, fraud, and breach of the insurance company's duty to investigate claims in a fair and equitable manner. The trial judge granted American Defender's 12(b)(6) motion, which was subsequently vacated and remanded to the trial court by the Court of Appeals. *Pearce v. American Defender Life Ins. Co.*, 62 N.C. App. 661, 303 S.E. 2d 608 (1983).

On remand, the trial judge granted a directed verdict at the close of plaintiff's evidence against her claims based upon fraud and unfair trade practices. The remaining claims for relief were subsumed in this issue, which the jury answered in the affirmative:

> Was the insured's death covered under that portion of the insurance policy issued by the defendant, which provided for the payment of $40,000 to the beneficiary in the event of the insured's accidental death?

The trial judge allowed American Defender's motion for judgment notwithstanding the verdict. The Court of Appeals held that the trial court had not erred in granting either motion. *Pearce v. American Defender Life Ins. Co.*, 74 N.C. App. 620, 330 S.E. 2d 9 (1985).

[1] Mrs. Pearce's breach of contract claim was based upon four theories—estoppel, waiver, the actual or apparent authority of

Ms. Wynne to contract with Lt. Pearce on her employer's behalf, and ratification. Addressing the waiver and estoppel bases for this claim, which were included in the trial court's judgment notwithstanding the verdict, the Court of Appeals noted that the flight exception to the rider was unambiguous. That court relied on the well-settled rule that the doctrines of waiver and estoppel have been applied in order to obviate the forfeiture provisions in insurance contracts, but that they "are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom . . . ." *Hunter v. Insurance Co.*, 241 N.C. 593, 595, 86 S.E. 2d 78, 80 (1955) (quoting 29 Am. Jur. *Insurance* § 903, at 690 (1960) ). Because "application of the doctrines of waiver and estoppel on these facts would essentially rewrite the policy, extending coverage to a risk expressly excluded therefrom, and obligating defendant to pay a loss for which it charged no premium," the Court of Appeals concluded that neither doctrine was available to Mrs. Pearce as a basis for relief. 74 N.C. App. at 626-27, 330 S.E. 2d at 13.

The Court of Appeals also rejected the argument that Ms. Wynne, who answered C. L. Dickerson's letter of inquiry, had the actual or apparent authority to modify Lt. Pearce's policy. Ms. Wynne, who was neither president, vice-president, nor secretary of American Defender, had no actual authority to modify the policy; and, because a caveat to this effect was expressly included in Lt. Pearce's policy, he "knew or in the exercise of reasonable care should have known that the agent was not authorized to enter into the contract." *Lucas v. Stores*, 289 N.C. 212, 220, 221 S.E. 2d 257, 263 (1976). If Lt. Pearce assumed that Ms. Wynne "had the authority to bind the company in the face of clear written notice to the contrary," the Court of Appeals concluded, then he "must . . . be held to have acted unreasonably." 74 N.C. App. at 628, 330 S.E. 2d at 14.

We find that the reasoning of the Court of Appeals was correct regarding these bases for Mrs. Pearce's breach of contract claim. Under the facts of this case, *Hunter*, 241 N.C. 593, 86 S.E. 2d 78, refutes plaintiff's estoppel and waiver arguments. And we agree with the Court of Appeals that there was insufficient evidence to support a breach of contract claim based upon Ms. Wynne's implied or actual authority.

[2] Plaintiff argues that the trial court erred in refusing to instruct the jury on ratification, and she requests that such an instruction be submitted should she be granted a new trial on her contract claim. Plaintiff argues that American Defender's acceptance of Lt. Pearce's premiums for eight years after his receipt of Ms. Wynne's letter without any indication to him of its inaccuracy constitutes ratification of its terms. Even assuming arguendo that inaccuracy, we are not persuaded that American Defender's acceptance of premiums constitutes conduct "inconsistent with an intent not to ratify," *Equipment Co. v. Anders*, 265 N.C. 393, 401, 144 S.E. 2d 252, 258 (1965). Throughout that eight-year period, Lt. Pearce continued to receive coverage under the rider for injuries or death resulting from *unexcepted* causes. Because American Defender continued to provide coverage in return for Lt. Pearce's premiums, we do not agree with plaintiff that its silence regarding the letter's contents must necessarily be interpreted as ratification of the letter's arguably erroneous terms. We therefore hold that the trial court did not err in refusing to instruct the jury on ratification.

[3] Plaintiff's claims based upon negligence, breach of fiduciary duty, and breach of an insurance company's duty to investigate claims in a fair and equitable manner were not included in the parties' briefs before the Court of Appeals and therefore were not considered by that court. Petitioners whose cases come before this Court on discretionary review are limited by Rule 16 of the North Carolina Rules of Appellate Procedure to those questions they have presented in their briefs to the Court of Appeals. Because these causes of action were not argued to that court, they are not properly before us.

[4] We now consider the claims based upon fraud and unfair trade practices which were included in the directed verdict. A directed verdict is proper only when it appears that the nonmovant fails to show a right of recovery upon *any* view of the facts that the evidence tends to establish. *West v. Slick*, 313 N.C. 33, 40, 326 S.E. 2d 601, 606 (1985); *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678 (1977). Upon defendant's motion for a directed verdict in a jury case, the trial court must consider all the evidence in the light most favorable to the plaintiff, and it may grant that motion only if, as a matter of law, the evidence is in-

sufficient to justify a verdict for the plaintiff. *West v. Slick*, 313 N.C. at 40-41, 326 S.E. 2d at 606.

The elements of fraud are (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party. *Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E. 2d 494 (1974). In viewing the evidence in the light most favorable to the plaintiff, we hold it to be insufficient to support a jury finding that defendant wrote and mailed the letter to Lt. Pearce with the intent to deceive him. Intent to deceive is an essential element of actionable fraud. *Tarlton v. Keith*, 250 N.C. 298, 108 S.E. 2d 621 (1959). Although the jury could find that the reply to Lt. Pearce as written could be interpreted to state falsely that he would be covered by the Accidental Death Rider if he died in the crash of an aircraft of which he was a crew member, whether that misstatement was the result of inartful wording or of intentional misleading would, without more, be purely a matter of conjecture. A jury may not base its verdict upon conjecture. *Kinlaw v. Willetts*, 259 N.C. 597, 131 S.E. 2d 351 (1963); *Hanrahan v. Walgreen Co.*, 243 N.C. 268, 90 S.E. 2d 392 (1955). Under these circumstances, the fact that the letter was mailed to Lt. Pearce would not sustain a finding that defendant intended to deceive him.

With this holding, it is unnecessary for us to review the evidence as to the other essential elements of fraud, and we express no opinion concerning the sufficiency of the evidence with respect to them. The Court of Appeals properly affirmed the directed verdict against plaintiff's fraud claim.

[5] Unfair or deceptive trade practices in the insurance industry are governed by N.C.G.S. § 58-54.4, a regulatory statute, which defines such practices, in pertinent part, as "[m]aking, issuing, circulating, or causing to be made, issued, or circulated, any . . . statement misrepresenting the terms of any policy issued . . . or the benefits or advantages promised thereby . . . ." In *Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 268 S.E. 2d 271 (1980), the Court of Appeals noted that these provisions included no private cause of action, and it held that N.C.G.S. § 75-1.1 provides a remedy for unfair or deceptive trade practices in the insurance industry. *See also Phillips v. Integon Corp.*, 70 N.C. App. 440, 319

S.E. 2d 673 (1984). In *Winston Realty Co. v. G.H.G., Inc.*, 314 N.C. 90, 331 S.E. 2d 677 (1985), this Court approved the *Ellis* court's reasoning and its result for claims alleging fraudulent representations brought under statutes regulating employment agencies. Justice Meyer wrote for the Court in *Winston Realty*:

> Although defendant is correct in pointing out that Chapter 95 is regulatory in nature, this fact does not prevent the finding of an unfair or deceptive trade practice based on the conduct proscribed by Chapter 95. N.C.G.S. § 97-47.5 prohibits private personnel services from engaging in specific conduct and activities, including the conduct specified in subsections (2) and (9) quoted above. Although the authority to enforce the Chapter 95 provisions rests with the Commissioner of Labor, it is obvious that the list of proscribed acts found in N.C.G.S. § 95-47.6 were designed to protect the consuming public. The Court of Appeals confronted a similar issue in *Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 268 S.E. 2d 271 (1980), where the defendant contended plaintiff could not recover damages under N.C.G.S. § 75-1.1 because unfair and deceptive acts in the insurance industry were regulated exclusively by the insurance statutes, N.C.G.S. § 58-54.1, *et seq.*, which do not contain a right of private action. Chapter 95 similarly contains no right of private action. The *Ellis* court held that N.C.G.S. § 75-1.1 does provide a remedy for unfair trade practices notwithstanding that insurance is regulated by statute. 48 N.C. App. at 183, 268 S.E. 2d at 273. We find this reasoning persuasive and hold that a violation of either or both N.C.G.S. §§ 95-47.6(2) and (9) as a matter of law constitutes an unfair or deceptive trade practice in violation of N.C.G.S. § 75-1.1.

314 N.C. at 97, 331 S.E. 2d at 681. The business of insurance is unquestionably "in commerce" insofar as an "exchange of value" occurs when a consumer purchases an insurance policy, *see Johnson v. Insurance Co.*, 300 N.C. 247, 262, 266 S.E. 2d 610, 620 (1980); people who buy insurance are consumers whose welfare Chapter 75 was intended to protect, *see Lindner v. Durham Hosiery Mills, Inc.*, 761 F. 2d 162 (4th Cir. 1985). The language of the Declaration of Purpose of Article 3A of Chapter 58 reveals that in part the intent of Article 3A is to define and prohibit unfair and deceptive trade practices.

The reasoning in *Winston Realty* is equally applicable to unfair and deceptive acts in the insurance industry. We now hold that a violation of N.C.G.S. § 58-54.4 as a matter of law constitutes an unfair or deceptive trade practice in violation of N.C.G.S. § 75-1.1.

Section 75-1.1 of the North Carolina General Statutes provides, in pertinent part:

> (a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

> (b) For purposes of this section, "commerce" includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession.

This section is enforced by section 75-16, which authorizes a private cause of action and which mandates the automatic assessment of treble damages once a violation of section 75-1.1 is shown. *See Marshall v. Miller*, 302 N.C. 539, 276 S.E. 2d 397 (1981). Section 75-16 provides:

> If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.

It is axiomatic that proof of fraud itself necessarily constitutes a violation of the prohibition against unfair or deceptive trade practices. *Winston Realty Co. v. G.H.G., Inc.*, 314 N.C. at 97, 331 S.E. 2d at 681. However, in order for Mrs. Pearce to make out a claim under section 58-54.4 as augmented by section 75-1.1, she must show only some — but not all — of the same elements essential to making out a cause of action in fraud.

Under the facts of this case, Mrs. Pearce must first demonstrate that Ms. Wynne's letter had the capacity or tendency to

deceive. Unlike a claim based upon fraud, proof of actual deception is not necessary. *Johnson v. Insurance Co.*, 300 N.C. at 265, 266 S.E. 2d at 622. Even a truthful statement may be deceptive if it has the capacity or tendency to deceive. *Id.* at 266, 266 S.E. 2d at 622. "In determining whether a representation is deceptive, its effect on the average consumer is considered." *Id.* at 265-66, 266 S.E. 2d at 622.

[6] Unlike the third element of proof in a fraud claim, the question "whether the defendant acted in bad faith is not pertinent" to whether his representation violated N.C.G.S. § 75-1.1. *Marshall v. Miller*, 302 N.C. at 544, 276 S.E. 2d at 400-01. But the second requisite to making out a claim under this statute is similar to the detrimental reliance requirement under a fraud claim. It must be shown that the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation. *See Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 268 S.E. 2d 271. Mrs. Pearce testified on voir dire:

Q. Did you have any further discussion with Captain Pearce concerning life insurance coverage?

A. Yes, we did.

. . . .

Q. Would you tell the Court, please, what transpired during that discussion. What was said.

A. We were leaving a party, or dinner, and we were in the car going home, and I commented to Doug that at the party the conversation had turned to life insurance and being covered while being on flying status. And I commented to him that I thought it was a rather morbid topic to be discussing among other fliers and the wives. And he said that it was important and that he knew he was covered, and that while he was on flying status the accidental death, or whatever phrase he used, double indemnity, was in effect, and that I didn't need to worry about it. And that there was no further need we'd have to discuss it.

Q. Did you have any discussion with him as to how he knew it was in effect?

A. Just that he had inquired about it when he went on to flying status, and he had been made aware by the company, he had checked into it and that he was covered.

The trial court sustained defendant's objection to the above testimony as hearsay. We do not consider Lt. Pearce's remarks to be hearsay. The remarks contain two assertions—that Lt. Pearce believed himself to be "fully" covered and the basis for that belief, namely, that "he had been made aware by the company, he had checked into it." Plaintiff offered these remarks to prove not the fact of coverage, but the fact of her husband's reliance upon defendant's letter. They were not offered as proof of their content but only that the remarks were made demonstrating the state of mind of Lt. Pearce. For this purpose the remarks were not hearsay and were admissible. N.C.R. Evid. 803(3) and 801(c); 1 Brandis on North Carolina Evidence §§ 161, 141 (1982).

American Defender contends that, even if it is admissible as a state of mind exception, evidence of Lt. Pearce's state of mind regarding his coverage is not relevant. We disagree. What Lt. Pearce believed about the extent of his life insurance coverage and why he believed it is directly pertinent to the question of his reliance upon defendant's misrepresentation.[1]

[7] Upon considering the entire evidence, including the erroneously excluded testimony, in the light most favorable to plaintiff, we hold that the evidence is sufficient to support a finding that Lt. Pearce relied to his detriment upon the statements in defendant's letter. The evidence supporting the unfair trade practice claim by a violation of N.C.G.S. § 58-54.4 was sufficient to survive the motion for directed verdict.

Accordingly, we affirm that part of the Court of Appeals decision that affirms the trial court's judgment notwithstanding the verdict and the directed verdict as to the fraud claim. We reverse that portion of the Court of Appeals decision that affirms

---

1. American Defender asserts that from the date Lt. Pearce's policy was issued until his death, there was no life insurance policy on the market that did not have a similar aviation exclusion clause. This fact, if true, does not preclude the possibility of detrimental reliance on the part of Lt. Pearce. Had he known that his widow would receive only $20,000 in benefits rather than the $60,000 she alleges was his belief, he might have purchased additional basic coverage or made other arrangements to provide for her financial security after his death.

the trial court's directed verdict as to the unfair trade practice claim.

Affirmed in part; reversed in part.

Justice MEYER concurring in part and dissenting in part.

I concur in that portion of the majority opinion affirming the trial judge's entry of judgment notwithstanding the verdict for the defendant carrier on the contract claim and the directed verdict on the fraud claim. I dissent from that portion of the majority opinion which holds that the Court of Appeals erred in affirming the trial judge's entry of a directed verdict in favor of the defendant carrier on plaintiff's claim for unfair or deceptive trade practices. The evidence was, as a matter of law, insufficient to justify a verdict for the plaintiff on this claim.

The majority hardly mentions the unique nature of the policy in question. Unlike standard policies, the "college defender policy" here has no exclusion for death occurring as a result of war or as a result of flight while a crew member as far as the $20,000 basic coverage is concerned.

The $40,000 accidental death benefit rider did, however, specifically contain exclusions for death caused by:

a. travel or flight in any aircraft if

    i. the insured is a pilot or crew member, receiving instructions, or any duty whatsoever, or

    ii. the aircraft is used for military purposes, or

b. military service during war.

In his application for this policy in 1968, Mr. Pearce answered the following questions as indicated:

10. a. Have you ever taken flights in private aircraft? If so, when? ............................... No

    b. Military aircraft? When? ..................... No

    c. Total hours flown .......................... None

    d. Do you have or have you ever had a pilot's license? ...................................... No

(Complete aviation questionnaire if answered
YES and attach to application.)
Date of last flight ......................... None

   e. Do you contemplate future aviation training? . No

11. a. Were you in Military Service? ............... No

   b. Are you in the active reserve now? .......... No
      Inactive? ................................. No

When Mr. Dickerson, who was a "Specialist in Military Financial Planning," reviewed the policy (with the application attached) in 1971 and wrote to the defendant carrier, the exclusion for flight as a crew member or trainee on the $40,000 accidental death benefit was obvious, and he apparently had no concern or question about the accidental death benefit coverage. He specifically asked only about the "application in 1968 for $20,000" and whether Lt. Pearce was fully covered for that amount now that he was an Air Force officer flying as a crew member or trainee on jet aircraft while in training and after graduation—particularly in view of the answers on the original application to which he referred. The letter made no reference to the $40,000 accidental death rider, but only to the $20,000 basic coverage. The only possible indication to the contrary would be a strained interpretation of the word "fully" in the first sentence of the letter: "Lt. Pearce signed an application in 1968 for $20,000 and he is concerned as to whether or not he is fully covered now that he is in the USAF." Because it was in the same sentence referring to the "$20,000" and to the "application" which contained the answers regarding this connection with flying on aircraft, it is obvious that the word "fully" refers to the $20,000 basic policy. I find untenable the majority's suggestion that this inquiry letter referred to the $40,000 accidental death benefit which was the subject of a specific exclusion.

It should also be noted that Mr. Dickerson's letter evidences his awareness that only specifically designated executives of the company could waive provisions of the policy. His letter closes with the admonition that Lt. Pearce "would like to have it spelled out over the signature of one of your executives."

It is likewise clear from the policyowners' service worker who responded to the inquiry that she was answering the precise question asked. In pertinent part, her reply was:

> Your program [already referring to the basic program] does not contain a war clause. In other words, the *basic program* is in full force and effect regardless of your occupation. The Accidental Death Rider portion of the policy would not be payable should your death occur as the result of a direct act of war. However, in addition to the basic policy, this Accidental Death Rider would also be payable should his [sic] death occur while in the Armed Forces but not as the result of an act of war.

(Emphasis added.)

The carrier responded directly to the precise inquiry concerning the $20,000 basic program and explained that it would be payable "regardless of your occupation" and even as a result of war. The reply was truthful in every respect and cannot, in my opinion, be said to be false or recklessly made or have any tendency to deceive. In fact, the response closed with this entreaty:

> Should this letter not fully answer your questions or if you would like additional information, please write directly to us or call us collect.  ·

I find insufficient evidence in this record to support a verdict based upon any unfair or deceptive trade practices.

I vote to affirm the unanimous decision of the Court of Appeals.