GREGORY, Circuit Judge,
concurring in part and dissenting in part:
Faced with what it suggests is an incoherent statutory scheme, the majority rewrites North Carolina law to require that a plaintiff alleging a UDTPA violation prove that the defendant engaged in intentionally deceptive conduct. North Carolina law is clear, however, that a UDTPA plaintiff need only show that the defendant’s conduct was objectively egregious, irrespective of that defendant’s subjective knowledge or intent. Because the district court found facts sufficient to establish that Everitt misrepresented the contents of the final contract to the Pearsons in an objectively egregious way, the Pearsons are entitled to judgment in their favor on the UDTPA claim.[1] I therefore respectfully dissent.
I.
The UDTPA, as applied and interpreted by the North Carolina courts, is not nearly as “nebulous” as the majority claims. Several things about the statute are, in fact, perfectly clear. A defendant commits an unfair trade practice when that defendant “engages in conduct which amounts to an inequitable assertion of its power or position.” Johnson v. Phoenix Mut. Life Ins. Co., 300 N.C. 247, 266 S.E.2d 610, 622 (1980). Likewise, a defendant’s subjective belief or intent does not determine whether that defendant’s conduct is deceptive; rather the effect that conduct would have on the average person does. Pearce v. American Defender Life Ins. Co., 316 N.C. 461, 343 S.E.2d 174, 180 (1986). North Carolina courts do not require a plaintiff seeking UDTPA recovery to prove a defendant’s intent to deceive precisely because the statute was designed to provide redress to plaintiffs whose fraud claims were not cognizable due to the difficulty inherent in proving a defendant’s subjective state-of-mind. Marshall v. Miller, 302 N.C. 539, 276 S.E.2d 397, 400 (1981). When a court considers whether the “egregious or aggravating circumstances,” Dalton v. Camp, 353 N.C. 647, 548 S.E.2d 704, 711 (2001), necessary to sustain a UDTPA claim are present, it is clear that it must *458 do so by evaluating those circumstances objectively.
The North Carolina Supreme Court illustrated this objective inquiry in Pearce. There, the decedent, an Air Force pilot, purchased and signed a life insurance policy, which excepted death in an airplane accident from coverage. Pearce, 343 S.E.2d at 176. When the decedent later inquired whether his family would be covered were he to die in a training accident, a representative responded, in good faith, that his family would be covered by the policy so long as he did not die in an act of war. Id. The decedent later died in a training accident, and the insurance company refused to pay, citing the contract’s express provision. Id. The court in Pearce found that even though there was no evidence that the insurance company intended to deceive the decedent, the company could still be liable under the UDTPA because the effect of the representative’s letter was to mislead a reasonable person as to the insurance contract’s meaning. Id. at 181. Thus, while there was clearly an honest misunderstanding between the insurance representative and the decedent, that misunderstanding was sufficiently egregious and the insurance company was sufficiently at fault to trigger UDTPA liability.
The evidence found by the trial court here surely supports a stronger UDTPA claim than that found by the court in Pearce. The district court here found that the Pearsons never agreed to the contingency clause with Everitt. It found no objective evidence that Everitt ever mentioned the clause at any of their meetings. It determined that the clause was not included in the first two drafts written by Everitt’s lawyer and reviewed by Pearson and concluded that when the clause was added, it was buried in an unaltered paragraph, with no indication that any change had been made.
Worse still, the court found that rather than send the revised agreement to the Pearsons via overnight, Federal Express delivery — the means by which the parties had previously communicated — Everitt tried, but failed, to fax the revised agreement to the Pearsons. The court found that Everitt’s attempt failed because he dialed the Pearsons’ voice number, not their fax number, and yet somehow did not realize that the fax did not go through.[2] And despite all of this, when it came time to close the sale, Everitt simply said “yes” when asked whether the contract Curtis Pearson was about to sign was the same one to which they had previously agreed.
This behavior from a sophisticated businessman falls squarely within the definition of unfair and deceptive conduct contemplated by UDTPA.[3] As the purchase agreement’s drafter, Everitt had a duty to *459 inform the Pearsons of any changes he made to the agreement after they had reviewed and agreed to it. By not taking the reasonable steps necessary to inform the Pearsons of the new provision and then subsequently enforcing it, Everitt unquestionably “engage[d] in conduct which amount[ed] to an inequitable assertion of [his] power or position.” Johnson, 266 S.E.2d at 622. The myriad ways in which he failed in this area render his conduct far more egregious than the conduct that led to the honest misunderstanding between the two parties in Pearce. See 343 S.E.2d at 176. This, when coupled with the evidence at trial suggesting that Ever-itt attempted to cover up his failures by instructing his consultant and lawyer on how to describe the incident in subsequent legal proceedings, makes this case precisely the “near-miss” fraud scenario that the North Carolina legislature sought to redress through the UDTPA. Marshall, 276 S.E.2d at 400. In my view, the district court erred by finding otherwise.
II.
The majority eschews any objective analysis of Everitt’s behavior. Despite acknowledging at the outset that good faith is not a defense under the UDTPA, Maj. Op. at 455-56, it instead ultimately concludes that because Everitt did not act intentionally, his conduct is insufficiently aggravating or egregious to implicate the UDTPA. See Maj. Op. at 456 (“As Mr. Everitt was not found to have acted deliberately in this case, his conduct does not rise to the level of unscrupulousness observed in South Atlantic.”). In so doing, it accepts Everitt’s oversimplistic dichotomy of deliberate versus innocent conduct. Surely this choice is false.
“Aggravating” is defined simply as that which makes something worse. Webster’s New International Dictionary 41 (3d ed. 1981). And “egregious” is defined as “extraordinary,” “extreme,” or “flagrant.” Id. at 727. Neither of these words suggest, by definition, any requirement that an actor must act with specific intent in order to engage in aggravated or egregious conduct. That conduct, like Everitt’s here, need only be beyond that which a reasonable person would consider to be acceptable behavior.
Likewise, the pages of the federal and regional reporters are filled with cases in which a defendant, acting with naive and innocent intent, commits a wrong for which that defendant is held criminally or civilly liable. A child places one bullet in a gun. He points it at a friend’s side and pulls the trigger multiple times before shooting and killing that friend. No matter that the child did not intend to kill anyone or believe that he would; his conduct was still so objectively egregious and aggravated that he was convicted of murder. See Pennsylvania v. Malone, 354 Pa. 180, 47 A.2d 445, 446-49 (1946).
Everitt’s conduct here created a similarly unacceptable risk that the Pearsons would be harmed and misled, even if Ever-itt honestly did not intend to do so. Based on the district court’s factual findings, it is clear that at every stage of the negotiations Everitt failed to make clear to the Pearsons that he intended to, or that he in fact had, inserted the termination provision into the contract. This was not a case in which contracting parties misunderstood one another because their revised agreement got lost in the mail or because each party ascribed a different meaning to a specific term than did the other one. No reasonable person in Everitt’s position could have believed that he had revealed the revised-contract’s provision to the Pearsons. Viewed objectively, Everitt’s conduct was so far outside the mainstream of business behavior — even typical, yet improper business behavior — that his victims *460 ought to receive redress through the UDT-PA.
III.
The North Carolina courts and legislature have seen fit to impose liability, including treble damages, on individuals or corporations that deceive or misrepresent others in the course of business transactions. It is clear that the law applies where a party abuses its position relative to another, notwithstanding the offending party's innocent intentions or good faith. Though we may think the law unduly harsh or unwise, so long as it is not preempted by federal statutory or constitutional provisions, we are bound to apply it in the same way that a state court would. We are not free to engraft additional provisions that have been explicitly rejected by the state's highest court.
Consequently, I would find Everitt liable under the UDTPA and remand to the district court with instructions to enter judgment in the Pearsons' favor. I respectfully dissent.

. As to the Pearsons' fraud claim, though I believe that the Pearsons adduced evidence sufficient to prove that Everitt acted with the requisite intent to defraud, the district court did not clearly err in crediting Everitt’s testimony to the contrary. I therefore concur in the majority's conclusion as to the fraud claim in Part III.

. As anyone who has mistakenly tried to fax a document to a voice number can attest, the fax machine's obnoxious response to this error makes it nearly impossible for a reasonable person to believe that the fax was successfully transmitted.

. These facts clearly distinguish this case from Carcano v. JBSS, LLC, 684 S.E.2d 41 (N.C.Ct.App.2009), upon which the majority relies heavily. In Carcano, the plaintiffs alleged a UDTPA violation after a joint venture with the plaintiffs failed, in part, because the business entity was never incorporated. Id. at 50-51. The court held that the defendants did not abuse their position, and consequently did not violate the UDTPA, because they too did not know about the failure to incorporate and were injured, as well. Id. Carcano therefore applies to a situation in which a third-party sabotages the business dealings of a plaintiff and defendant. It does not apply to a situation like this one, in which it is the defendant who causes the harm and abuses his position by failing to reasonably disclose material information of which he is aware and the plaintiff is not.